# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-DP-01025-SCT

*CALVIN HUNTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/93 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CLAYTON T. LEWIS |
| | ANDRE' DE GRUY |
| | ANNE V. WINTER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE JR. |
| | LESLIE STAEHLE LEE |
| DISTRICT ATTORNEY: | TURNER, KEN, |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | REVERSED AND REMANDED FOR NEW TRIAL; SENTENCE VACATED - 6/27/96 |
| MOTION FOR REHEARING FILED: | 7/11/96 |
| MANDATE ISSUED: | 12/12/96 |

EN BANC.

PRATHER, PRESIDING JUSTICE, FOR THE COURT:

¶1. This is a capital murder case arising from the shooting death of James Albert Brewer outside his home in Union. The defendant, Calvin Hunter, was convicted of murdering the victim during the commission of a robbery, and was sentenced by the Neshoba County Circuit Court to death by lethal injection. The dispositive issue in this case is the failure to instruct the jury on the elements of the underlying crime of robbery; this failure requires reversal. The other issues raised by Hunter are without merit. However, in order to provide guidance on remand, this opinion will also address: the

trial court's denial of Hunter's motion to recuse; the shuffling of venire members during jury selection; the admission of Hunter's statement; the trial judge's appointment of the jury foreman; and the comments made by the prosecutor throughout the trial. The following is a complete list of the issues raised by Hunter on appeal:

## PRE-TRIAL ISSUES

**I. Whether the trial court erred in denying Hunter's motion to recuse?**

## GUILT PHASE ISSUES

**II. Whether the prosecutor's comments during voir dire violated Hunter's rights?**

**III. Whether the trial judge's moving venire members to the end of the jury list without cause or explanation violated Hunter's rights?**

**IV. Whether the State exercised peremptory challenges to remove African-Americans from the jury in violation Hunter's rights?**

**V. Whether the admission of Hunter's statement violated his rights?**

**VI. Whether the trial court erred in failing to instruct the jury on the crime of robbery?**

    **A. Whether the instruction offered by Hunter was properly denied?**

    **B. Whether the trial court failed to instruct on robbery?**

    **C. Whether the district attorney or the trial judge was obligated to offer an instruction on the elements of the underlying crime?**

**VII. Whether the trial court failed to fully instruct the jury on manslaughter?**

**VIII. Whether jury instruction S-8 at the guilt phase relieved the State of the burden of proving intent to commit the underlying felony, thereby violating Hunter's rights?**

**IX. Whether the trial court's instruction to the jury on the manner of its deliberations was unduly coercive in that it forbade any consideration of the lesser included offense until and unless the jury had unanimously agreed to acquit the defendant of the greater charge?**

**X. Whether the trial court denied Hunter a fair and impartial jury by appointing the jury foreman?**

**XI. Whether the prosecutors' comments in closing argument violated Hunter's rights?**

**XII. Whether the evidence before the jury on the underlying felony of robbery was legally insufficient to support a verdict of capital murder?**

## SENTENCING PHASE ISSUES

**XIII. Whether the trial court erred in submitting to the jury the robbery-murder aggravating**

**circumstances?**

**XIV. Whether the failure to define one of two aggravating circumstances found by this jury requires that the death sentence be vacated?**

**XV. Whether the trial court erred in submitting to the jury the aggravating circumstance that Hunter had been convicted of another capital offense?**

**XVI. Whether the trial court's anti-sympathy instruction coupled with denial of a mercy instruction violated Hunter's rights?**

**XVII. Whether the trial court erred in instructing the jury at sentencing that it could consider "the detailed circumstances of the offense?"**

**XVIII. Whether the trial court erred in instructing the jury that, in order to return a sentence of life imprisonment, it had to find that the mitigating factors outweigh the aggravating circumstances?**

**XIX. Whether the trial court erred in submitting to the jury in the sentencing phase of the trial the form of the verdict as contained in sentencing instruction S-1?**

**XX. Whether the prosecutors' comments in closing argument violated Hunter's rights?**

**XXI. Whether the aggregate error in this case requires reversal of the conviction and death sentence?**

**XXII. Whether the death penalty is a disproportionate punishment given the circumstances of the crime and the character of the defendant?**

<u>**LEGAL ANALYSIS**</u>

**PRE-TRIAL ISSUES**

**I. Whether the trial court erred in denying Hunter's motion to recuse?**

¶2. On the Friday before this case was set to go to trial on Monday, Hunter presented his motion to recuse Judge Marcus D. Gordon. Hunter's basic argument was that the trial judge's law firm had represented the victim (Jimmy) in his divorce from his wife (Lucille). Specifically, the trial judge's nephew, Rex Gordon, Jr., had represented Jimmy in the divorce, in which Hunter was Lucille's "named paramour." A no-fault divorce was eventually entered. Furthermore, the parties stipulated that (after the trial judge left the firm) Rex Gordon, Jr., represented Jimmy's estate and his daughter. This same daughter was a witness against Hunter at trial.

¶3. The trial judge denied Hunter's motion to recuse, and made the following statement:

> I practiced law until January of 1991 in the firm in Union known as the Gordon Law Firm, of which Rex Gordon, Jr. was a member. It appears that [Rex Gordon, Jr.] filed a complaint for divorce for James Albert Brewer in June of 1990. That there was the wife of James Albert Brewer, who was the Defendant in the case, was represented by the Honorable Jerry Bustin of

Forest, Mississippi. That later, through negotiations among the parties, the matter was resolved by a no-fault divorce that was entered in September of 1990.

Now, the question [the defense attorney] raises is that the Trial Judge should recuse himself in the trial of the case of State of Mississippi vs. Calvin Hunter, with Calvin Hunter being named as the paramour of Lucille Brewer.

Now, I do not recall the law firm representing this case, nor any witnesses, nor was the case ever discussed between myself and Rex Gordon, Jr.

I fail to see how a case involving a victim of an offense, a domestic case involving a victim of an offense, and another person, raises the appearance of impropriety in the case where a paramour is being tried for the murder of his friend's husband.

¶4. On appeal, Hunter argues that Judge Gordon should have recused himself, because "the combination of Judge Gordon's familial and firm relationship to counsel for the victim and the State's witnesses against Calvin Hunter provides the appearance of and the potential for partiality."

¶5. Canon 3(C)(1) of the Code of Judicial Conduct provides as follows:

**C. Disqualification.**

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it.

Miss. Code of Judicial Conduct, Canon 3(C)(1). "[T]he Canon enjoys the status of law such that we enforce it rigorously . . ." *Green v. State*, 631 So. 2d 167, 177 (Miss. 1994).

Mississippi has an objective test in determining when a judge should recuse himself. *Jenkins v. State*, 570 So.2d 1191, 1192 (Miss.1990). "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Rutland v. Pridgen*, 493 So.2d 952, 954 (Miss.1986).

The presumption is 'that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a 'reasonable doubt' (about the validity of the presumption)[.]" *Turner v. State*, 573 So.2d 657, 678 (Miss.1990). When a judge is not disqualified under the constitutional or statutory provisions[[1]], 'the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion.' *Buchanan v. Buchanan*, 587 So.2d 892 (Miss.1991); *Turner*, 573 So.2d at 677; *Ruffin v. State*, 481 So.2d 312 at 317 (1985) (quoting *McLendon v. State*, 187 Miss. 247, 191 So. 821, 823 (1939)).

*Banana v. State*, 635 So. 2d 851, 853 (Miss. 1994) (quoting *Collins v. Joshi*, 611 So. 2d 898, 901 (Miss. 1992)); *Green v. State*, 631 So. 2d 167, 177 (Miss. 1994).

> "While an attorney may rightfully, in cases where he thinks the judge's relations would result to the injury of the defendant, move for a recusation of the judge; this Court, in such a case, will look to the whole trial and pass upon questions on appeal in the light of the completed trial. Every act and movement had during the entire trial will be considered, and if we are unable to find that rulings have been prejudicial to the defendant, we will not reverse."

*Adams v. State*, 220 Miss. 812, 817, 72 So. 2d 211, 213-14 (Miss. 1954) (trial judge need not recuse himself where he had previously presided over civil case involving same defendant and same transaction) (quoting *Garrett v. State*, 187 Miss. 441, 455, 193 So. 452, 456 (Miss. 1940)). There is nothing in the manner in which Judge Gordon presided over Hunter's trial and exercised his discretionary powers that would indicate prejudice to Hunter. Furthermore, there was nothing in the record regarding any financial arrangements of the trial judge with his former law firm. Indeed, Hunter does not allege that he was actually prejudiced, he only argues that the trial judge's relations gave the appearance of impartiality.

¶6. Hunter has not overcome the presumption that the trial judge was qualified and unbiased. Furthermore, Judge Gordon did not abuse his discretion by overruling Hunter's motion to recuse. *See Cantrell v. State* 507 So. 2d 325, 327-28 (Miss. 1987); *Rutland v. Pridgen*, 493 So. 2d 952, 953-54 (Miss. 1986). On this record, there was no evidence of prejudice or impropriety that would require the trial judge's recusal. Therefore, this assignment of error is without merit, and the trial judge's denial of the motion to recuse is affirmed.

## GUILT PHASE ISSUES

### III. Whether the trial judge's moving venire members to the end of the jury list without cause or explanation violated Hunter's rights?

¶7. At voir dire, there were seven prospective jury panels. The trial judge moved some veniremen to different jury panels, so that more prospective jurors would be considered prior to them. He also moved some of the prospective jury panels to the end of the list for consideration. The record clearly demonstrates that the trial judge rearranged the veniremen to accommodate the personal problems of certain jurors. For example, he moved a woman who had a problem with swollen feet and two school bus drivers who were scheduled for re-certification training "way down on the list for selection."

¶8. Defense counsel made no objection to the judge's shuffling of the veniremen. For this reason, the issue is procedurally barred on appeal. *Foster v. State*, 639 So. 2d 1263, 1270 (Miss. 1994) (quoting *Cole v. State*, 525 So.2d 365, 369 (Miss.1987)) ("If no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case."). Furthermore, "[t]his Court has often held that a party waives any and all claims regarding the composition of his jury if he fails to raise an objection before the jury is sworn." *Conner v. State*, 632 So. 2d 1239, 1264 (Miss. 1993); *Myers v. State*, 565 So. 2d 554, 557 (Miss. 1990).

¶9. Moreover, the judge's actions should stand, unless Hunter can demonstrate prejudice, bias, or fraud. *Pulliam v. State*, 515 So. 2d 945, 948 (Miss. 1987); *Harris v. State*, 406 So. 2d 823, 824

(Miss. 1981). Hunter has made no such demonstration. Of note, however, is the fact that one black venireman was moved further down the list for consideration without explanation. This could be prejudicial -- particularly in cases such as this -- where the defendant is black, a **Batson** challenge is raised during jury selection, and the jury that is eventually empaneled is composed of twelve white members. ***See Batson v. Kentucky***, 476 U.S. 79 (1986).[(2)]

¶10. Generally, the direction in jury selection is within the discretion of the trial judge. ***Harris***, 406 at 823. However, trial judges should avoid any actions that might suggest that the juror pool is being manipulated for racial or other improper reasons. Therefore, if a trial judge employs this practice of rearranging the veniremen to accommodate the personal problems of prospective jurors (thereby maintaining a larger juror pool), he should be certain to give explicit reasons for moving each venireman to the end of the list.

## V. Whether the admission of Hunter's statement violated his rights?

¶11. At trial, a hearing was held outside the presence of the jury to determine the admissibility of Hunter's statement to the police. The record reflects that, on the evening of April 8, 1993, Hunter and the victim's ex-wife (Lucille) were apprehended by the Mississippi Highway Patrol (MHP) near Jackson. They were detained in Jackson until the Neshoba County authorities arrived.

¶12. Officer Greg George (an investigator for the Neshoba County Sheriff's office) and Chief Deputy Pheris Savell arrived in Jackson and spoke with Hunter at approximately 11:05 that night. Hunter refused to give a statement. Hunter testified that he requested an attorney, but both officers denied that such a request was made.

¶13. Hunter was taken to the Neshoba County jail. The next day, April 9, 1993, the jailer informed Officer George that Hunter wanted to speak with him. At approximately 12:45 p.m., and in the presence of Officer Tommy Waddell (an investigator for the Philadelphia Police Department), Officer George advised Hunter of his ***Miranda*** rights. Hunter acknowledged that he understood his rights, and signed a waiver-of-rights form. Hunter testified that he understood the waiver-of-rights form.

¶14. Hunter was not under the influence of drugs or alcohol. Both officers testified that no threats or promises were made to him. Hunter was not represented by an attorney; he did not ask for a lawyer or for the questioning to cease. Hunter gave a statement regarding Jimmy Brewer's death. Officer George read the statement to Hunter, and Hunter signed it without making any changes.

¶15. Hunter testified that, on April 9, 1993, Lucille (the victim's ex-wife and Hunter's alleged paramour) had cancer and was bleeding. He told the officers that he would make a statement if they would arrange medical treatment for Lucille. According to Hunter, Officer George told him that Lucille would be released for treatment if he gave a statement. Hunter said that he relied on Officer George's assurances when he gave his statement. However, both officers denied that Hunter agreed to give the statement in exchange for medical treatment for Lucille.

¶16. The trial judge ruled that Hunter was advised of his constitutional rights, that he understood those rights, and that he knowingly, intelligently, and voluntarily waived them. The statement, with some editions, was admitted.[(3)]

**¶17.** On appeal, Hunter argues that the statement should not have been admitted because: (a) he had previously requested an attorney, and the statement was taken in violation of his right to counsel and (b) his statement was not voluntary, because it was given in exchange for medical treatment for Lucille.

¶18. First, this Court addresses Hunter's alleged request for an attorney in Jackson on the night he was arrested. Hunter testified that he requested an attorney; Officers George and Savell denied that he made such a request. Regardless of whether he actually requested an attorney, Hunter admits that he sent for Officer George the next day. The law is well-established that an accused person can waive his right to counsel by initiating conversation with law enforcement:

> An accused, after expressing a desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. Once the right to counsel has attached, and the accused asserts the right, he is protected from further police-initiated interrogation. Even if an accused has procured an attorney, the accused may still waive the right to have the lawyer present during any police questioning. Nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney. Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will. This Court has found that a defendant may waive his Sixth Amendment right to counsel when he waives his Miranda rights.

*Mettetal v. State*, 602 So. 2d 864, 868 (Miss. 1992) (citations omitted). This Court finds that the appellant "knowingly and voluntarily waived his right to assistance of counsel during the statement to the police." *See Mettetal*, 602 So. 2d at 869.

¶19. The next issue raised by Hunter is whether his confession was voluntary. The standard of review in such cases is well-settled. "Once the trial judge has determined at a preliminary hearing, that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal." *Sills v. State*, 634 So. 2d 124, 126 (Miss. 1994) (quoting *Frost v. State*, 483 So. 2d 1345, 1350 (Miss. 1986)). "Such findings are treated as findings of fact made by a trial judge sitting without a jury as in any other context. As long as the trial judge applied the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence." *Foster v. State*, 639 So. 2d 1263, 1281 (Miss. 1994) (citations omitted). "Where, on conflicting evidence, the court makes such findings, this Court generally must affirm." *Lesley v. State*, 606 So. 2d 1084, 1091 (Miss. 1992) (citations omitted).

> The general rule is that for a confession to be admissible it must have been given voluntarily, and not as the result of any promises, threats or other inducements. The burden is on the prosecution to prove beyond a reasonable doubt that the confession was voluntary. The "burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward."

*Chase v. State* 645 So. 2d 829, 838 (Miss. 1994) (citations omitted).

¶20. In the case at hand, both officers who witnessed Hunter's statement testified that it was voluntarily given. They specifically denied promising Hunter that Lucille would receive medical treatment in exchange for his statement. Therefore, the State made a prima facie showing that Hunter's statement was voluntary. The trial judge did not abuse his discretion or commit manifest error when he ruled that Hunter's statement was admissible. *See Jenkins v. State*, 607 So. 2d 1171, 1175 (Miss. 1992); *Lutes v. State*, 517 So. 2d 541, 548-49 (Miss. 1987). Thus, Hunter's arguments on this point are without merit, and his statement is admissible.

## VI. Whether the trial court erred in failing to instruct the jury on the elements of the crime of robbery?

**¶21.** Hunter's next argument is that the trial court committed reversible error by failing to instruct the jury on the elements of the underlying crime of robbery. The record reflects that no instruction regarding the elements of robbery was given.

¶22. Hunter's argument raises three questions: (A) whether the trial judge erred in denying Hunter's proposed jury instruction, (B) whether the elements of robbery were included in the instructions that were given, and (C) whether it was incumbent on the district attorney to offer such an instruction.

¶23. Based on the following analysis, the trial judge correctly denied Hunter's proposed instruction as confusing. However, it also seems that reversible error was committed when the jury was not instructed on the elements of the underlying crime of robbery, and that the district attorney should have offered such an instruction.

## A. Whether the instruction offered by Hunter was properly denied?

¶24. Hunter argues that the trial judge failed to give his proposed instruction D-19 regarding the elements of the crime of robbery. The record reflects that, after the parties rested and the jury was excused, the trial judge began to rule on proposed instructions. The judge deemed several of the instructions confusing, including D-19. He recessed overnight, in order to give the defense attorney an opportunity to re-draft his proposed instructions.[4]

¶25. The next morning, the judge went back through the instructions.[5] The trial judge again refused to give instruction D-19 "because of being repetitious and rambling and confusing." There is no evidence that the defense attorney attempted to amend D-19, which read as follows:

> The Court instructs the jury that in this case, the defendant, Calvin Hunter, is accused of having committed a capital crime; that is, he the said Calvin Hunter took the life of Jimmy Brewer, with the then present intent to rob the said Jimmy Brewer. If you, the jury, find that the State has failed to prove from the evidence, or lack of evidence, beyond a reasonable doubt, any one of the elements of the crime of robbery which are at the time and place testified about, the said Calvin Hunter alone or in concert with another unlawfully assaulted Jimmy Brewer, which is to say, unlawfully put Jimmy Brewer, in fear of some immediate injury to his person; and that the assault, if any was made by Calvin Hunter with the specific intent to then steal the personal property belonging to Jimmy Brewer in his presence or from his person and against his will; that further, by virtue of the assault, if any, Calvin Hunter did take, steal, and carry away personal property belonging to Jimmy Brewer, from the presence or person of Jimmy Brewer and against

his will, then there has been no robbery of Jimmy Brewer by Calvin Hunter and it is your sworn duty to find Calvin Hunter not Guilty of Capital Murder.

Further, if from the evidence or lack of evidence, you find that Calvin Hunter did kill Jimmy Brewer; but, did not at the time of the alleged homicide have the present intent to rob Jimmy Brewer; but that said intent to rob the said Jimmy Brewer, if any was formed after the alleged homicide, then in that event also, you must find Calvin Hunter not guilty of Capital Murder.

In the event you so find, either one or both of the before mentioned conditions you may proceed with your deliberations in order to determine whether the State has proven from said evidence and beyond a reasonable doubt defendant's guilt of the lesser crime of non-capital murder.

The Court further instructs you that in order to find the defendant, Calvin Hunter, guilty of the crime of non-capital murder you must find that the State has proved from the evidence beyond a reasonable doubt that on the date and at the place testified about, the defendant, Calvin Hunter did feloniously and with the deliberate design to cause the death of Jimmy Brewer in fact kill the said Jimmy Brewer without authority of law and not in necessary self-defense. If the state's evidence has failed to prove any one or more of these elements beyond a reasonable doubt then you shall find the defendant not guilty of murder.

¶**26.** The proposed instruction is long, confusing, and contains several different concepts. It cannot be said that the trial judge erred by refusing to grant instruction D-19. *See Sudduth v. State*, 562 So. 2d 67, 72 (Miss. 1990) ("This Court has repeatedly condemned confusing and misleading instructions.").

## B. Whether the trial court failed to instruct on the elements of robbery?

¶27. Hunter also argues that the failure to instruct the jury with regard to the elements of the underlying crime of robbery constitutes reversible error. The State points out that the following instruction was given as instruction S-8:

The Court instructs the Jury that in a case of capital murder, wherein the alleged underlying offense is robbery, the fact that the murder, if any occurred prior to the taking, if any, does not lessen the crime of robbery. The Court instructs the jury that if you find from the evidence beyond reasonable doubt that the chain of events of the fatal injury of James Brewer and the taking of his property formed a continuous chain of events, then the fact that James Brewer was dead at the time the Defendant took his property does not absolve the Defendant from the crime of robbery.

¶28. The State argues that Hunter should have objected to the giving of instruction S-8 in order to preserve this issue on appeal. The State seems to be arguing that S-8 is an instruction on the elements of robbery, and that, therefore, the jury was instructed with regard to the underlying offense. Indeed, "an instructional error will not warrant reversal if the jury was fully and fairly instructed by other instructions." *Collins v. State*, 594 So. 2d 29, 35 (Miss. 1992); *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991).

¶29. Miss. Code Ann. § 97-3-19(2)(e) (Supp.1990), provides:

> The killing of a human being without authority of law by any means in any manner shall be capital murder in the following cases: . . . when done with or without any design to effect death, by any person engaged in the commission of the crime of . . . robbery, . . . or any attempt to commit such felonies. . . .

¶30. Miss. Code Ann. §97-3-73 (1972) provides that "every person who shall feloniously take the personal property of another in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery."

¶31. Instruction S-8 did not mention any of these elements. Rather, it instructed the jury regarding the sequence of the robbery and the murder. The State's argument to the contrary is without merit. Furthermore, none of the other instructions that were given defined the underlying offense of robbery.

**C. Whether the district attorney was obligated to offer an instruction on the elements of the underlying crime of robbery?**

**¶32.** Indeed, no instruction on the elements of the underlying offense was given. The defendant offered a confusing instruction, which was properly refused. The State did not offer an instruction on the elements of the underlying offense of robbery. This Court holds that the State had a duty to ensure that the jury was properly instructed on the elements of the underlying crime.

> It is hornbook criminal law that before a conviction may stand the State must prove each element of the offense. Not only is this a requirement of the law of this State, due process requires that the State prove each element of the offense beyond a reasonable doubt.

*Neal v. State*, 451 So. 2d 743, 757 (Miss. 1984). A logical corollary of this principle is that, because the State has to prove each element of the crime beyond a reasonable doubt, then the State also has to ensure that the jury is properly instructed with regard to the elements of the crime. *See also Hosford v. State*, 525 So. 2d 789, 792 (Miss. 1988) (quoting *Adams v. State*, 202 Miss. 68, 75, 30 So. 2d 593 (Miss. 1947) ("In conducting a criminal case, the prosecuting attorney must be fair and impartial, **and see that defendant is not deprived of any constitutional or statutory right**.") (emphasis in original).

¶33. However, the State argues that it is incumbent on the defendant to offer such an instruction, and cites several cases, all of which can be distinguished. *See Ballenger v. State*, 667 So. 2d 1242, 1252 (Miss. 1995); *Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1993); *Gray v. State*, 472 So. 2d 409, 416 (Miss. 1985) (reversed on other grounds, 481 U.S. 648 (1987)).

¶34. *Ballenger* is factually similar to the case *sub judice,* in that the defendant/appellant was convicted of capital murder during the commission of a robbery and sentenced to death. Ballenger claimed that the trial judge erred by failing to grant two of her instructions, which discussed the elements of robbery. One of the instructions was not marked given, refused, or withdrawn, and was not discussed in the transcript. This Court held that Ballenger's argument with regard to that

instruction was not properly preserved for appeal. The second instruction was on the lesser included offense of robbery. This Court ruled that the trial judge properly refused to give the instruction because it would have allowed the jury to find Ballenger guilty of robbery, but not guilty of capital murder. *Id.* at 1252. In the case *sub judice*, the proposed instruction containing the elements of the underlying crime was marked "refused". Furthermore, Hunter did receive a proper lesser included offense instruction on simple murder. Therefore, *Ballenger* is factually distinguishable and does not apply.[(6)]

¶35. The other cases cited by the State dealt with lesser included offense instructions. *See Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1993); *Gray v. State*, 472 So. 2d 409, 416 (Miss. 1985). These cases can be distinguished from the case at hand, which deals with an instruction on the underlying crime -- that is, the alleged crime which elevated this to a capital case. *See also Harper v. State*, 478 So. 2d 1017, 1023 (Miss. 1985).

¶36. "Just as the State must prove each element of the offense, the jury must be correctly and fully instructed regarding each element of the offense charged." *Neal*, 451 So. 2d at 757 n.9. Failure to submit to the jury the essential elements of the crime is "fundamental" error. *Screws v. United States*, 325 U.S. 91, 107 (1945). In capital murder cases, the trial court is "required to instruct just as fully regarding the definition of [the underlying crime] as it [is] on murder." *Id.* Indeed,

> "[i]t is axiomatic that a jury's verdict may not stand upon uncontradicted fact alone. The fact must be found via jury instructions correctly identifying the elements of the offense under the proper standards." "Where the jury had incorrect or incomplete instructions regarding the law, our review task is nigh unto impossible and reversal is generally required."

*Henderson*, 660 So. at 222 (citations omitted).

¶37. It is rudimentary that the jury must be instructed regarding the elements of the crime with which the defendant is charged. Therefore, even though the defendant did not present an acceptable instruction, the State was obligated to do so. Reversal on this issue is warranted. *See Henderson v. State*, 660 So. 2d 220, 222 (Miss. 1995); *Neal v. State*, 451 So. 2d 743, 757 n.9 (Miss. 1984); *see also Watson v. State*, 465 So. 2d 1025, 1031 (Miss. 1985).

## X. Whether the trial court denied Hunter a fair and impartial jury by appointing the jury foreman?

**¶38.** Prior to the jury's retiring, the trial judge appointed the jury foreman. Hunter made no objection, and he did not raise the issue in his post-trail motion. Therefore, he is precluded from raising this issue on appeal. *See Robinson v. State*, 662, So. 2d 1100, 1104 (Miss. 1995); *Foster v. State*, 639 So. 2d at 1270.

**¶39.** Furthermore, this issue was recently addressed in the case of *Ballenger v. State*, 667 So. 2d 1242, 1258-59 (Miss. 1995). This Court held that Ballenger was procedurally barred from raising the argument on appeal. The court went on to rule that, "In the future, trial judges are advised not to appoint jury foremen. Who is to be the foreman is a decision which should be made by fellow jurors." *Id.*

¶40. Hunter was tried approximately two years before the ruling in *Ballenger*; therefore, the court's prospective advice in *Ballenger* does not apply to this appeal. On remand, however, the jurors should select the jury foreman.

## SENTENCING PHASE ISSUES

## XX. Whether the prosecutors' comments in closing argument violated Hunter's rights?

¶41. Hunter argues that several prosecutorial comments made during closing arguments violated his right to a fair trial. Specifically, Hunter contends that: (A) the prosecutor improperly interjected personal opinion at closing arguments in both the guilt and sentencing phases, and (B) the prosecutor improperly asked the jury at the sentencing phase to "send a message" with the verdict.

¶42. Hunter's first argument, which deals with the prosecutor's alleged statement of personal opinion, is procedurally barred. *See Foster v. State*, 639 So. 2d 1263, 1288-89 (Miss. 1994) ("A prosecutor is forbidden from interjecting his personal beliefs regarding the veracity of witnesses during closing argument. By the same token, it is incumbent on defense counsel to raise a proper objection when the offensive language is uttered or waive appellate review of the issue.").

¶43. Furthermore, "wide latitude" is granted to attorneys during closing arguments. *See Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988). Moreover, a prosecutor "may comment upon any facts introduced in evidence" and "may draw whatever deductions seem to him proper from these facts." *Shell v. State*, 554 So. 2d 887, 900 (Miss. 1989). However, this Court has warned prosecutors to "refrain from interjecting personal beliefs into presentation of their cases." *Chase v. State*, 645 So. 2d 829, 854-55 (Miss. 1994) (quoting *Nixon v. State*, 533 So. 2d 1078, 1100 (Miss. 1987)). On remand, that warning should be heeded.

¶44. Hunter also asserts that the prosecutor improperly asked the jury to "send a message" during the closing arguments at the penalty phase. This Court has repeatedly cautioned prosecutors not to use this argument. *Chase v. State*, 645 So. 2d 829, 854 (Miss. 1994); *Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988); *Carleton v. State*, 425 So. 2d 1036, 1039 (Miss. 1983). Indeed, "[t]he function of the jury is to weigh the evidence and determine the facts. . . . Mississippi jurors are not messenger boys." *Williams*, 522 So. 2d at 209. For this reason, the use of the "send a message" argument should be avoided on remand.

## <u>CONCLUSION</u>

¶**45.** The failure to instruct the jury on the elements of the underlying crime of robbery constitutes reversible error. This case is reversed and remanded for a new trial and proceedings consistent with this opinion.

¶**46. REVERSED AND REMANDED FOR A NEW TRIAL. SENTENCE IS VACATED.**

**PITTMAN AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN PART. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION. SULLIVAN, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. LEE, C.J., NOT PARTICIPATING.**

**BANKS, JUSTICE, CONCURRING:**

¶47. I concur with the result reached by the majority in this case and all that is said. I write separately only to express a note of caution with regard to the recusal issue.

¶48. This is a capital murder case. It involves, like any other case, numerous instances of the exercise of judicial discretion. The trial judge was, relatively recently, a member of the firm which is, in the person of the judge's nephew, representing the estate of the deceased. While the judge was a member of the firm, the firm represented the deceased in his action for divorce against the accused accomplice and in which the accused was named correspondent or "paramour." This certainly raises a yellow flag, if not a red one. The record does not reflect whether the judge continues to have any interest in any of the affairs of the firm. We, of course, accord the trial judge the presumption of propriety. The trial judge here is both learned and experienced. With due regard, however, to the admonition of our cannon that the appearance of partiality be avoided, I am compelled to urge that additional consideration be given to the question of recusal on remand.

¶49. Additionally, as noted by Justice Sullivan, I consider the "send a message" argument sufficient for reversal.

**SULLIVAN, PRESIDING JUSTICE, CONCURRRING IN PART AND DISSENTING IN PART:**

¶50. I concur with the majority that this case must be reversed and remanded due to the State's failure to offer a jury instruction on the elements of the underlying offense of robbery. I also agree that the State should not use the "send the message" argument on remand. I write to clarify that not only should the State not ask the jury to "send the message" to the county, the community, or society at-large, when deciding the punishment of the accused, but that the State's use of this type of summation is always improper and is reversible error.

¶51. The State improperly argued that the jury should "send a message" with its verdict. The prosecutor stated to the jury:

> **By Mr. Turner**: [T]he death penalty sends the message to these kinds of people that I guarantee you gets their attention in a way that a life sentence in the penitentiary cannot.
>
> . . .
>
> Now, the death penalty in this case will certainly deter this Defendant from killing anyone else and robbing him of his money, but, likewise, it will deter not only him, but others like him, who may wish - -
>
> **By Mr. Lewis**: Judge, I am going to object to what it would do to others at this point in time.

**By the Court**: Objection overruled.

**By Mr. Turner**: It will deter other people like this Defendant, who want to prey upon citizens of this county, who are not able to defend themselves, and who want to go to their homes in peace and quiet and safety, from being robbed and murdered.

¶52. This "send a message" comment made by the prosecutor during summation, exceeds the bounds of proper advocacy and improperly shifted the burden on the jury to sentence Hunter to death in order to "send a message" to the community at-large. The argument by the State urged the jury to sentence Hunter to death to correct societal problems, rather than on evidence of his guilt of the offense charged.

¶53. The "send a message" argument invokes fear and emotion, instead of reason, and may inflame or mislead the jury. This variety of summation is clearly designed not to suggest that the jury make a logical appraisal of the evidence to impose or not to impose the death penalty but to render a decision based upon inflammatory suggestions appealing to their collective concerns. It is inappropriate for the prosecutor to make arguments to the jury that give the impression that emotion may reign over reason, and to present inflammatory rhetoric that diverts the jury's attention from its proper role, or invites an irrational, purely subjective response.

¶54. A jury may not impose the death penalty to "send a message" to the public; they may only hold that particular defendant responsible for his crime, not the crimes of others. In the future, the State must refrain from emotional appeals that have the capacity to divert the jury from a fair consideration of the evidence of guilt. The jury is not in the business of sending messages. The jurors' duty is only to weigh the evidence put forth before them and decide if the evidence merits execution because death is the appropriate punishment for the crime committed.

¶55. Again, as has been stated before by this Court, in the future a prosecutor should refrain from argument that distracts the jury from its duty to decide the case on the evidence by instilling issues broader than the guilt or innocence of the accused. *See Williams v. State*, 522 So. 2d 201(Miss. 1988).

> The jurors are representatives of the community in one sense, but they are not *to vote in a representative capacity*. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wished to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. . . . The function of the jury is to weigh the evidence and determine the facts.

*Williams*, 522 So. 2d at 209.

¶56. Hunter was entitled to be punished only on the evidence before the jury at that time and only on the evidence relevant to his circumstances. A jury can impose the death penalty only if the evidence relating to those charges convinces them of the defendant's guilt beyond a reasonable doubt, not to fix societal problems. Accordingly, I agree with the majority that this sort of argument should not be used on remand, and I add that the State's use of the "send a message" summation is reversible error.

**McRAE, J., JOINS THIS OPINION.**

**SMITH, JUSTICE, DISSENTING:**

*¶57.* The majority vacates Calvin Hunter's conviction of capital murder for the killing of James Albert Brewer and sentence of death imposed by a Neshoba County Jury. The majority reverses and remands for a new trial because of the failure to instruct the jury on the elements of the underlying crime of robbery. I disagree and accordingly dissent.

¶58. After both sides finally rested their respective cases on July 13, 1993, the trial judge considered the instructions of law. Hunter submitted Instruction D-19 which *inter alia* contained the elements of the crime of robbery. The trial judge, however, was concerned with the remainder of the instruction. The majority admits that "The defendant offered a confusing instruction, which was properly refused." Majority at 17. The majority then writes that the failure by the State to offer an instruction on the elements of the underlying offense of robbery was error, citing as authority, *Neal v. State*, 451 So. 2d 743, 757 (Miss. 1984). However, *Neal* stands for the premise that due process requires that the State prove each element of the offense beyond a reasonable doubt and not for the proposition that the State must always offer an instruction on an element of the underlying felony. Besides, in *Neal*, the State failed to include all of the elements of the offense. The concept of inveigling was not included by the State in its underlying felony kidnapping instruction. Nevertheless, this Court affirmed Neal's capital murder conviction stating:

> Considering the evidence in the light most favorable to the verdict, we easily conclude that reasonable hypothetical jurors could find beyond a reasonable doubt that Neal was in fact guilty of kidnapping as that offense had been described and defined in the instructions of the court.

*Neal*, 451 So. 2d at 758.

¶59. While no single instruction did include all elements of robbery, some of the elements are listed in Instructions, S-1A, S-2 and S-8. Surely, these instructions assisted the jury which obviously believed beyond a reasonable doubt that Hunter robbed and killed Brewer. I agree with the majority that the State bears the burden of proving beyond a reasonable doubt all of the elements of the offense. In fact, the State in the case at bar did prove all of the elements of the underlying offense of robbery as well as those required for a capital murder conviction. In fairness to the majority, the better procedure would be for the State to offer an instruction defining the underlying offense. But, this is the first time that this Court has ever held it to be reversible error when the State failed to offer an instruction on the underlying felony in a capital murder case. However, the Court in fact has reversed where the defendant failed to provide properly worded jury instructions regarding the elements of the crime. *See Henderson v. State*, 660 So. 2d 220, 222 (Miss. 1995); *Neal v. State*, 451 So. 2d 743, 757 n.9 (Miss. 1984); and *Watson v. State*, 465 So. 2d 1025, 1031 (Miss. 1985).

¶60. However, it is more than noteworthy that this Court has held that it is incumbent on the defendant, not the trial judge, to offer such an instruction. *Ballenger v. State*, 667 So. 2d 1242, 1252 (Miss. 1995); *See also Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1993) (regarding instruction on lesser included offense of simple murder-not underlying crime); *Gray v. State*, 472 So. 2d 409, 416 (Miss. 1985) *reversed on other grounds*, 481 U.S. 648 (1987). This Court has, in fact,

reprimanded a defense attorney for not submitting a jury instruction that specifically embraced the "facts which he and Bray testified occurred which would have made this killing an excusable accident." *Triplett v. State*, 666 So. 2d 1356, 1360 (Miss. 1995).

¶61. This Court has generally held that the trial judge is ultimately the one who is responsible for a jury being properly instructed on the applicable law. In *Duvall v. State*, 634 So. 2d 524, 526 (Miss. 1994), this Court opined, "A circuit judge has a responsibility to see that the jury is properly instructed." *See Peterson v. State*, 518 So. 2d 632, 637 (Miss. 1987); *Harper v. State*, 478 So. 2d 1017, 1018, 1022-23 (Miss. 1985). The majority has failed to cite a single case on point to support its holding that it is reversible error for the State to fail to offer a jury instruction on the underlying felony. Failure to instruct the jury on an essential element of an offense does not always amount to plain error requiring reversal. *United States v. Herzog*, 632 F.2d 469, 472 (5th Cir. 1980). We should not deviate in this case from our precedent cases.

¶62. The trial judge when considering Instruction D-19 stated, "D-19, there is no way the jury can follow this instruction and glean what you are trying to say." The judge determined that other instructions submitted by Hunter's counsel were confusing, thus he reasoned, "What I am going to do, I am going to recess this jury. We will start over in the morning. We will come here at 8:30 and start passing on jury instructions. So, you will have to redraw your instructions." There was no objection to D-19 by the district attorney nor any comments made regarding this instruction. Hunter's counsel did not object to the judge's suggestions or actions, nor did he comment.

¶63. The action taken by the trial court was appropriate at that stage of the proceedings. The judge was obligated to modify or to give Hunter's counsel the opportunity to modify the instruction at issue which the judge felt was confusing. *Mease v. State*, 539 So. 2d 1324, 1335 (Miss. 1989)(where instruction relates to central feature of the case, and where only one "inartfully [sic] drawn" instruction on this issue is presented to the trial judge, the trial judge has ability to modify or obligation to explain deficiencies to defense counsel and allow defense counsel opportunity to present new instruction). In the case at bar, the trial judge allowed an overnight recess for Hunter's counsel to redraw and submit a new Instruction D-19.

¶64. On July 14, 1993 at 8:30 a.m., the judge reconvened for reconsideration of the jury instructions. The trial judge started the process over again, proceeding through each and every instruction. When the trial judge reconsidered D-19, Hunter's counsel had wholly failed to redraft the instruction. The trial judge stated, "*D-19 is refused, because of being repetitious and rambling and confusing*." There were no comments made at that time by Hunter's counsel or the district attorney. Having given defense counsel the opportunity to re-draw Instruction D-19, the trial judge was correct when he told Hunter's counsel, "there is no way the jury can follow this instruction and glean what you are trying to say." The instruction was extremely long, repetitious, rambling, misleading and practically incomprehensible. It certainly cannot be said that the trial judge erred by refusing to grant the instruction as written. This Court, in *Sudduth v. State*, 562 So. 2d 67 (Miss. 1990), stated:

> Turning to the second point raised by this assignment of error, we find that the trial court did not err in excluding Jury instruction D-1. The trial court found the instruction confusing, and we agree. This Court has repeatedly condemned confusing and misleading instructions. *Holmes v. State*, 483 So. 2d 684, 686 (Miss. 1986).

*Sudduth*, 562 So. 2d at 72.

¶65. The refusal of this confusing, misleading and rambling instruction, which Hunter's counsel failed to re-draft, did not deny Hunter an instruction on his theory of the case. This was not the only instruction presenting Hunter's theory. Instruction D-25 presented Hunter's primary theory of self defense to the jury. Hunter agreed to the court modified Instruction S-8 which dealt with Hunter's theory of the sequence of the robbery and the murder as to intent. He also failed to re-draw Instruction D-19. Hunter cannot fault the trial judge for his own failures. This Court, in *Hester v. State*, 602 So. 2d 869 (Miss. 1992), stated, "[w]here a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error." *Id.* at 872. Instruction D-19 as drafted did not meet all of the *Hester* requirements. The instruction was not a proper statement of the law, but rather was a rambling combination which would only confuse the jury. Hunter could have re-drafted D-19, but did not do so. Additionally, D-19 was not Hunter's sole instruction on his theory of the case.

¶66. Hunter's counsel further confused the issue concerning the giving of an instruction containing the elements of the underlying offense of robbery when the trial judge considered whether to give Instruction S-8. Hunter's counsel insisted that S-8

> has to have the intent of the robbery has [sic] to be prior to it. What I am saying is the intent to rob must be established prior to the killing in order to have that instruction. In other words, that intent has to be in the accused's mind when the killing occurs. The intent to rob cannot be formed after the killing for it to be murder.

This apparently triggered the trial court to ask, "Do we have an instruction giving the elements of the crime of robbery? I don't believe so." Hunter's counsel responded, "No, sir. It got struck." In fact, that is not what had happened. The trial court again commented, "I don't believe we have it." Hunter's counsel responded emphatically, "*I have got it laid out in the lesser included offense*." This statement was not true either and apparently no one, including the defense counsel, district attorney or the trial judge checked to verify if the elements of robbery had in fact been "laid out" in attorney Lewis' supposed lesser included offense instruction.

¶67. In fact, the record reveals that Lewis did not offer any lesser included offense instruction. The only lesser included offense instruction tendered to the court was by the State. Instruction S-1A *inter alia* informed the jury that:

> If you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in the indictment and testified about, that the Defendant, Calvin Hunter, did willfully, unlawfully, feloniously, and without the authority of law, and of his malice aforethought, kill and murder James Albert Brewer, a human being, but that he, the said Calvin Hunter, *was not then and there engaged in the commission of the crime of robbery* of James Albert Brewer, then it is your duty to find the Defendant guilty of Simple Murder.

¶68. Hunter's counsel also failed to offer a lesser included offense manslaughter instruction. He attempts to raise that issue here on appeal for the first time and of course is not only procedurally barred, but even considering that issue on the merits, there is none. There was absolutely no evidence in this record to support the giving of a manslaughter instruction had Hunter's counsel even tendered

one for consideration by the trial court.

¶69. The only point of contention that Hunter's counsel ever raised about this issue concerned his request that "intent to rob" language be included in Instruction S-8. Instruction S-8 did not concern the elements of the underlying offense, but rather dealt with the sequence of the robbery and the murder. Unquestionably, this issue was a focus of one of Hunter's theories of the case, that any intent to rob occurred after the killing, hence his insistence that it be included in the instruction. Hunter's primary theory was self defense. The jury was adequately instructed on this theory. S-8 was amended by the trial judge to include the necessary language to make the jury aware that the killing was done during the course of a robbery. Hunter's counsel acknowledged to the trial court after the court's second revision of the instruction, that "he knew it was the law." Hunter's counsel made no objection. In *Cole v. State*, 525 So. 2d 365 (Miss. 1987) *cert denied*, 508 U.S. 962 (1993) *post-conviction relief motion granted on other grounds*, 666 So. 2d 767 (Miss. 1995), this Court stated:

> Counsel may not sit idly by making no protest as objectionable evidence is admitted, and then raise the issue for the first time on appeal. If no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case.

*Cole*, 525 So. 2d at 369.

¶70. Regardless, even if this Court were to consider the merits of this issue, Hunter cannot prevail. Hunter's argument is that the robbery occurred as an afterthought, thus there is no capital murder. The twice modified instruction ultimately given by the trial judge was legally correct. *Pickle v. State*, 345 So. 2d 623,627 (Miss. 1983). *Pickle* states that "we hold that where the two crimes are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained."; *Walker v. State*, No. 92-DP-00568-SCT, (Oct. 12, 1995), *reh'g. denied*, April 18, 1996; *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985); *Moore v. State*, 344 So. 2d 731, 735 (Miss. 1977); *Neal v. State*, 451 So. 2d 743, 757-58 (Miss. 1984); *Pruett v. State*, 431 So. 2d 1101, 1104-05 (Miss. 1983), *cert. denied* 464 U.S. 865 (1983); *Wheat v. State*, 420 So. 2d 229 , 238 (Miss. 1982), *cert denied* 460 U.S. 1-56 (1983); *Shanklin v. State*, 290 So. 2d 625, 627 (Miss. 1974); *Thompson v. State*, 258 So. 2d 448 (Miss. 1972).

¶71. The case *sub judice* appears to be on all fours with *Dufour v. State*, 453 So. 2d 337 (Miss. 1984), *cert. denied*, 469 U.S. 1230. In *Dufour*, no instruction defining the underlying felony of robbery was given to the jury and this Court held that the evidence adduced at trial proved that the murder was committed during the course of a robbery. *Dufour*, 453 So. 2d at 346. Subsequently, on post-conviction relief review by this Court in *Dufour v. State*, 483 So. 2d 307 (Miss. 1985), *cert. denied,* 479 U.S. 891, 107 S.Ct. 292, 93 L.Ed. 2d 266 (1986), the Court held:

> Petitioner claims that his counsel was ineffective for not offering a complete instruction on, or objecting to the failure to instruct, on the elements of the underlying felony of robbery. The Court considered the question of whether or not a robbery was in fact committed, and found that the evidence fully supported the finding that robbery had been committed. *Dufour v. State,* 453 So. 2d at 346.

*Dufour*, 483 So. 2d at 308-309.

¶72. Returning to the case at bar, the situation here is no different than in *Dufour*. There is an abundance of evidence supporting the jury verdict that Hunter robbed and murdered Brewer. The evidence of robbery is supported by: (1) Hunter went to Brewer's residence armed. (2) Brewer's wallet, held to his belt by a chain, containing $1,700.00 was taken by Hunter. (3) Brewer's pants pockets were turned inside out, as was one of the victims in *Dufour*. (4) Brewer's wallet was thrown out beside the highway. (5) Hunter told a witness that he was going to kill Brewer because of Brewer's possession of some insurance money that Hunter believed Brewer would not give to him. (6) Hunter told Lucille that "We need to get his money to have something to leave on." (7) Hunter shot Brewer with the .30 .30 rifle that Hunter claimed Brewer usually kept inside the door of the trailer. He threw it away into a canal while fleeing the scene. (8) The money was taken by violence to Brewer's person. (9) Lucille had already packed her suitcase and was ready to go prior to Hunter robbing and killing Brewer. This Court, in *Voyles v. State*, 362 So. 2d 1236, 1243 (Miss. 1978), *cert denied*, 441 U.S. 956 (1979), stated that intent to rob "may be shown by the acts of the person involved as well as the circumstances surrounding such action." *See Walker v. State*, No. 92-DP-00568-SCT (Oct. 12, 1995), *reh'g. denied*, April 18, 1996; *Wheat v. State*, 420 So. 2d 229, 238 (Miss. 1982); *Fisher v. State*, 481 So. 2d 203, 213 (Miss. 1985). As in *Dufour*, there was more than sufficient evidence for the jury to find that Hunter robbed and murdered Brewer. This Court should affirm on this issue as we did in *Dufour*.

¶73. Hunter waived his objection to an instruction on the underlying felony of robbery and is barred from raising it here for the first time. *Cole,* 525 So. 2d at 369; *Chase v. State*, 645 So. 2d 829, 835 (Miss. 1994); *see Foster v. State*, 639 So. 2d 1263 (Miss. 1994). He also failed to cite this error as grounds for a new trial in his Motion For Judgment Notwithstanding the Verdict, or alternatively, Motion For a New Trial. Even under the merits, no manifest injustice occurred. *See Gray v. State*, 487 So. 2d 1304 (Miss. 1986).

¶74. I respectfully dissent.

**ROBERTS, J., JOINS THIS OPINION.**

1. The Mississippi Constitution provides that:

> No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties.

Miss. Const. Art. 6, § 165 (1890). The Mississippi Code provides that:

> The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by consent of the judge and of the parties.

Miss. Code Ann. § 9-1-11 (1972). These constitutional and statutory provisions do not apply in the case *sub judice*.

2. We have reviewed Hunter's *Batson* challenge, and find it to be without merit.

3. Apparently, a portion of the statement dealing with cocaine was redacted. Because the deleted words do not appear in the record, this Court makes no ruling with regard to their admissibility.

4. These actions were proper. At this point, the judge was obligated to modify or to give the defendant the opportunity to modify the instruction. *See Mease v. State*, 539 So. 2d 1324, 1335 (Miss. 1989) (where instruction relates to central feature of the case, and where only one "inartfully drawn" instruction on this issue is presented to the trial judge, the trial judge has ability to modify or obligation to explain deficiencies to defense counsel and allow defense counsel opportunity to present new instruction). The trial judge allowed Hunter's attorney an overnight period to redraw the instruction. The factual crux in this case is that Hunter's attorney apparently did not do so.

5. The record reflects that the trial judge, apparently recognizing the importance of an instruction on the elements of robbery, asked whether such an instruction had been offered. The defense attorney incorrectly replied that the elements of robbery were contained in the lesser included offense instruction. Neither attorney attempted to further verify on the record that an instruction on the elements of robbery had, in fact, been offered.

6. This Court agrees that *Ballenger* correctly stands for the propositions that it is incumbent upon the defendant to preserve the record for appeal and to offer an instruction on any lesser included offenses the defendant wishes to pursue. However, Hunter properly preserved the issue for appeal. Furthermore, the issue in dispute in the case *sub judice* is instruction on the underlying crime -- the crime which elevated this murder to a capital case -- not a lesser included offense instruction. *See Ballenger* 667 So. 2d at 1252.