IN THE COURT OF APPEALS

8/12/97

OF THE

STATE OF MISSISSIPPI

NO. 93-KA-00856 COA

DANYEL L. CLEMONS APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HONORABLE MARCUS D. GORDON

COURT FROM WHICH APPEALED: NESHOBA COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT: JOHNNIE E. WALLS, JR.

LYNDA CAROL ROBINSON

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE MCCRORY

DISTRICT ATTORNEY: HONORABLE J. KENNEDY TURNER

NATURE OF THE CASE: MURDER

TRIAL COURT DISPOSITION: CONVICTED OF MURDER AND SENTENCED TO LIFE IN PRISON

MANDATE ISSUED: 11/13/97

ON PETITION FOR REHEARING

EN BANC.

THOMAS, P.J., FOR THE COURT:

The petition for rehearing filed by the State of Mississippi is hereby granted. The previous opinions are withdrawn and these opinions are substituted therefor.

Danyel L. Clemons was indicted, tried and convicted of murder in the Circuit Court of Neshoba County. Aggrieved, Clemons appeals assigning as error the followings:

**I. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY TO CONSIDER THE GUILT OR INNOCENCE OF THE DEFENDANT FOR THE CHARGE OF MURDER, SINCE THE OVERWHELMING CREDIBLE EVIDENCE COULD NOT SUPPORT A CONVICTION FOR MURDER, BUT ONLY FOR MANSLAUGHTER GIVEN THE FACTS AS ADDUCED AT TRIAL.**

**II. THE TRIAL COURT ERRED BY DENYING DEFENDANT A *BATSON* CHALLENGE TO THE COMPOSITION OF THE JURY.**

**III. THE APPOINTMENT OF A WHITE MALE AS FOREPERSON OF THE JURY BY THE COURT FOR THE REASONS ANNOUNCED THEREFOR TAINTED THE DELIBERATIONS AND DENIED APPELLANT A FAIR TRIAL.**

FACTS

On December 22, 1992, Clemons, a black male, fatally shot Kevin Tolbert, a white male, after a verbal and physical confrontation occurred between the two men. The confrontation began after Clemons attempted to exchange a carburetor that he had purchased at Tolbert's auto salvage business in House, Mississippi. Tolbert told Clemons that company policy precluded refunding the money for the carburetor without a receipt; however, Clemons could exchange the part. One of Tolbert's employees and Clemons searched the salvage yard for a replacement, but they were unable to locate a suitable part for the exchange. Clemons then demanded a refund without a receipt, and Tolbert refused again, stating store policy. The two men began to furiously argue, at which point, Tolbert asked Clemons to leave the salvage yard immediately, or he would call the police. At that point, Clemons got into his car and pulled off through the gated entrance. However, Clemons parked his car, walked back through the gate, and hit Tolbert, knocking him to the ground. Clemons jumped on top of Tolbert and hit him while Tolbert was on the ground. A bystander eventually broke up the fight. Thereafter, Clemons got into his car as if to leave. However, Clemons backed the car inside the gate, almost hitting Tolbert. Tolbert threw a brick through the right rear quarter glass of the car, shattering the window. Clemons stated that when he heard the brick hit the window, he thought it was a gunshot. Clemons got out of the car with a pistol in his hand. Tolbert backed away from Clemons, and turned to run away from Clemons. Clemons then shot Tolbert, who was unarmed. Shortly thereafter, Clemons surrendered himself to the sheriff's office.

On March 2, 1993, Clemons was indicted by the grand jury of Neshoba County for the murder of Kevin Tolbert. Clemons was convicted of murder and was sentenced to life imprisonment.

ANALYSIS

I.

**THE TRIAL COURT ERRED IN INSTRUCTING THE JURY TO CONSIDER THE GUILT OR INNOCENCE OF THE DEFENDANT FOR THE CHARGE OF MURDER, SINCE THE OVERWHELMING CREDIBLE EVIDENCE COULD NOT SUPPORT A CONVICTION FOR MURDER, BUT ONLY FOR MANSLAUGHTER GIVEN THE FACTS AS ADDUCED AT TRIAL.**

Clemons contends that the trial court erred in submitting the case to the jury on the issue of murder, arguing that the evidence at most would only support a conviction of manslaughter. Without restating the facts outlined herein above, we simply note that there was a jury issue created over whether this homicide was murder or manslaughter and only the jury could resolve the matter. *Windham v. State*, 602 So. 2d 798, 801 (Miss. 1992). *See also Strong v. State*, 600 So. 2d 199, 203 (Miss. 1992); *Johnson v. State*, 475 So. 2d 1136, 1139 (Miss. 1985).

Clemons's argument, that the evidence could not support a murder instruction, necessarily tests the sufficiency of the evidence. As such, we view the evidence in the light most favorable to the State under our well settled standards of review. *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987). The

evidence shows Clemons initiated the incident by first threatening to beat Tolbert and then threatening to kill him. Clemons thereafter attempted to back over Tolbert, and when Tolbert broke Clemons's car window with a brick, Clemons exited his vehicle with a gun, approached an unarmed Tolbert and shot him in the back from a distance of approximately 20 to 25 feet as Tolbert was trying to retreat. These facts overwhelmingly support a finding of a deliberate and cold-blooded killing. *Harris v. State*, 532 So. 2d 602, 603-05 (Miss. 1988) (murder conviction was supported by evidence that the defendant started a fight with an unarmed victim and shot him three times).

Intertwined under this assignment is also an argument the trial court erroneously granted manslaughter instructions S-4 and C-1 over Clemons's D-6. The instructions read as follows:

## S-4

The Court instructs the jury that every killing of a human being without the authority of law is either murder or manslaughter. Murder when done with the deliberated design to effect the death of the person killed, and manslaughter when done in the heat of passion, without malice and without any premeditation.

If the State has failed to prove all of the essential elements of the crime of Murder, you may consider the lesser charge of Manslaughter. However, it is your duty to accept the law given to you by the Court, and if the facts and the law warrant a conviction of the crime of Murder, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge but does not justify a verdict for the lesser crime.

## C-1

The Court instructs the Jury that manslaughter is the killing of a human being without authority of law, not in necessary self-defense, in the heat of sudden passion, without malice aforethought.

## D-6

The Court instructs the jury that murder is done deliberately with malice aforethought and manslaughter is done without malice or deliberation, but in the heat of passion, by use of a deadly weapon, without authority of law and not in necessary self-defense.

If you, the jury, find from the evidence in this case, beyond a reasonable doubt, that Kelvin Tolbert died as a result of his having been shot by Defendant, Danyel Clemons, through the use of a deadly weapon, while Danyel Clemons, was angry and in the heat of passion, and that the shooting was not in necessary self-defense, then you shall find the Defendant guilty of manslaughter.

There was no objection to S-4, and Clemons cannot be heard here to complain over the granting of the same. *Settles v. State,* 584 So. 2d 1260, 1262 (Miss. 1991). Clemons's objection to C-1 was that "it doesn't go further to tell the jury that if they find him guilty of manslaughter, that they should find him guilty of manslaughter." Instructions S-4 and C-1 are correct statements of the law, and D-4 is nothing more than cumulative. *Johnson v. State,* 475 So. 2d 1136, 1148 (Miss. 1985). (The trial court "is not required to grant several instructions on the same question in different verbiage").

## II.

### THE TRIAL COURT ERRED BY DENYING DEFENDANT A *BATSON* CHALLENGE TO THE COMPOSITION OF THE JURY.

Clemons asserts that he was denied the right to challenge the State's use of its peremptory strikes under *Batson v. Kentucky*, 476 U.S. 79 (1986). As seated the jury consisted of five Native Americans, seven whites, and a Native American as an alternate. Clemons was black, and Tolbert was white. The State used all twelve of its peremptory strikes; it struck six blacks, four whites and two Native Americans. Clemons likewise used all twelve of his peremptory strikes; all twelve were white.

After both the State and Clemons had exercised their peremptory challenges and a jury of twelve with one alternative had been chosen, the following exchange occurred:

**BY MR. WALLS**: Your Honor, according to my understanding, if we make a *Batson* challenge, this would be the time for us to make it, and we would move the Court to deny those peremptory challenges exercised by the State against --

**BY THE COURT**: But, you are not timely. You should have made them at the time he was exercising his challenges. The same would apply to you, also, because the *Batson* now applies to the Defendant, also. It applies to him, as well as the State, and I would have been ruling on your challenges and his at the time --

**BY MR. WALLS**: Your Honor, I --

**BY THE COURT**: -- on whether or not the challenge is acceptable.

**BY MR. WALLS**: Your Honor, it was my understanding that the only way you could make that challenge is to wait and look at the totality of the challenges, and see if the State, in fact, used it against all Black jurors, and in this particular instance, I wouldn't know until he completed his challenges.

**BY THE COURT**: No. His first challenge would by Rita McBeth, a Black lady, and I ask him what's his reason. He would have to give me a racially neutral reason, and then I go through his, and then I make a ruling, and also for you, you exercising your challenges, you first excused John Hollis Munn, who is White, and you would give me your reason, and then I would rule he could exercise this challenge and this and this challenge, and then I would rule you could exercise this challenge and this challenge. But, now, you have denied me that right.

**BY MR. WALLS**: Well, Your Honor, I didn't mean to deny the Court that right. Let me just say, I guess, for the record, I am simply following the procedure that has been used by some of the other Judges. That is not to say they are right in the way they do it, but I normally wait until after the State has made all its challenges and then make an objection, and then the State, of course, has the right to do the same thing.

**BY THE COURT**: Now, let's say he fails to give me a racially neutral reason to Juror say No. 5, and I say I an going to disallow that strike, and then I am going to disallow your strike to Juror No. 8. He's used his challenges and gotten on down here, and then I turn around to you, and I want your reasons, and I disallow your strike to Juror No. 2 and Juror No. 10, and here we are with four jurors, and none of you know what challenges you have got left and what challenges you don't have.

**BY MR. WALLS**: I understand, but normally -- well, I won't say normally. The way I have seen it done, once the challenges are made, then the Court goes back and requires the State to justify their reasons as non-racial reasons, and then make that same requirement of the Defendant Then, if the Court is satisfied those reasons were not valid, then the Court would disallow those challenges, and we would have to go back and put those people back on the jury.

**BY THE COURT**: Then, how would you keep up with how many strikes you have exercised and how many you haven't?

**BY MR. WALLS**: It will be difficult, Your Honor. I will have to admit that.

**BY THE COURT**: But, the procedure that should be followed is you announce to me at the beginning of the selection of the jury, you are going to exercise *Batson*. Then when he challenges a Black, I ask him why, and then if he doesn't give me a racially neutral reason, I disallow the strike, and then when he finally presents you twelve, then I rule that he has not exercised his strikes according to *Batson*, and then I get with you, and if you don't comply with the decision, then I disallow your strikes, and then when we are through, you know how many strikes you have exercised and how many you have remaining.

I will try to cure it in some fashion. I don't know if I can do it or not, but I want to know why you

strike -- I am coming back to yours separately now, and I am going to disallow your strikes unless you have a racially neutral reason.

We will start all over. Beverly Ann Wallace. She is Indian. You accepted her. You struck Rita McBeth. Why did you strike Rita McBeth?

**MR. DUNCAN**: Because her son, Charles McBeth, has been convicted by us, or in Neshoba County.

**BY MR. TURNER**: Sheriff's Office case, aggravated assault on a law enforcement officer.

**BY THE COURT**: All right. You exercised a challenge to Ernestine Pickens who is Black.

**BY MR. DUNCAN**: Her and her husband were recently charged with arson by the local law enforcement.

**BY THE COURT**: Bobbie Gail Boyd.

**BY MR. DUNCAN**: Your Honor, she is somehow closely related to another Defendant in the same aggravated assault case on law officers as McBeth was.

**BY MR. TURNER**: That would be Billy Ray Boyd.

**BY MR. DUNCAN**: That was convicted, a Neshoba County case.

**BY THE COURT**: You exercised a strike to Arlessa Clemons, who is Black.

**BY MR. DUNCAN**: Your Honor, she answered on voir-dire that she was related to the Defendant in this case.

**BY THE COURT**: I am going to allow all strikes -- wait a minute. I believe that is all, isn't it?

**BY MR. TURNER**: We had also excused Jay Hugh Graham, and the reason for that is he is the brother of Dorothy Graham, who was sent to jail by this same Sheriff's Office, and she is also related to Michael Graham, who has also been imprisoned in cases made by these officers.

**BY MR. WALLS**: Also, Marcus Dupree.

**BY MR. DUNCAN**: We excused him, Your Honor, because as I understand it, the Court has had problems getting him to come for jury service, in the first place, and, also, he has been arrested on numerous occasions and held in the Neshoba County Jail for various reasons.

**BY THE COURT**: I am going to permit the strikes of all jurors except Bobbie Gail Boyd as being racially neutral reasons. So, I am going to put her back on.

\* \* \* \*

**BY THE COURT**: What about Mrs. Boyd, who they believe -- what was the reason again?

**BY MR. TURNER**: She is closely related to Billy Ray Boyd, who this Sheriff's Office convicted of aggravated assault on a law officer.

**BY THE COURT**: She is kin to somebody who was convicted of a crime by the Sheriff's Office.

**BY MR. WALLS**: The Court disallowed that challenge?

**BY THE COURT**: That is a much better reason than somebody who just raised their hand because they had heard of the case.

**BY MR. WALLS**: Quite honestly, Your Honor, I would think that is a reason, a racially neutral reason, I would think. That's the kind of reason the Courts have normally used, sustained if a person had some problem with law enforcement or members of the family, and, likewise, people who you ordinarily would be able to challenge on the basis of cause.

**BY THE COURT**: Of course, *Batson* gives everybody concern. I guess if a juror says, "Well, I just don't like Blacks," that would be a -- or, "I don't like Whites," I think that would be cause.

All right. I am going to back up then. I am going to rule on the strikes the State has exercised as being non-racial, as well as the strikes of the Whites by the Defendant himself. So, I am going to accept the strikes as exercised.

Clemons couches this assignment of error in terms that he was denied the right to challenge under *Batson*, the State's use of its peremptory strikes. However, the record bears out that while the trial court initially held Clemons's objection under *Batson* to come too late, the trial court nonetheless went back and required the State to come forward with race neutral reasons for its use of strikes against blacks, which it did so and which the trial court accepted. Particularly, as to Bobbi Gail Boyd,

whom the trial court initially denied the State the right to challenge, even Clemons admitted the reason given to strike her by the State was race neutral when the trial court reconsidered the same and allowed. Although Clemons's brief on this assignment is less than clear and cites us to no case except *Batson*, he seems to be arguing that since no blacks were seated on the jury this was error, particularly in view of the fact he allegedly could not argue a "practice and pattern" argument. It is abundantly clear from the record Clemons said all he wanted to say, added nothing more, nor attempted to make any other argument or proffer. Clemons has failed to advance any meaningful argument or citation to authorities so as to show any merit to this assignment. *Hoops v. State*, 681 So. 2d 521, 526 (Miss. 1996). Certainly, being related to the defendant, having a prior criminal history, and having relatives involved in criminal pasts are all reasons previously held neutral and allowable in exercising peremptory strikes. *Lockett v. State*, 517 So. 2d 1346, 1350-57 (Miss. 1987) (*See* Appendix I of *Lockett* for other valid race-neutral reasons). The fact that the ultimate jury selected contained no member of the same race as the defendant in and of itself is not error. *Hughes v. State*, 420 So. 2d 1060, 1062 (Miss. 1982).

We do note a point that merits comment, and that is when a *Batson* challenge ought to be invoked. The trial court obviously took the position that when the State started to strike a black that Clemons should have invoked *Batson* immediately. Clemons thought it preferable to wait and see the total composition of the jury. There is no case, rule or statute that provides direction. We decree no rule but simply comment that invoking *Batson* early on gives the trial court the opportunity to immediately cure a problem if one exists while at the same time putting the trial court on notice of any overall developing patterns.

## III.

## THE APPOINTMENT OF A WHITE MALE AS FOREPERSON OF THE JURY BY THE COURT FOR THE REASONS ANNOUNCED THEREFOR TAINTED THE DELIBERATIONS AND DENIED APPELLANT A FAIR TRIAL.

At the conclusion of the case, the trial court instructed the jury as to the law and then allowed closing arguments. The trial court then recessed for lunch. When all necessary parties reassembled after lunch, the trial court excused the alternate juror and then stated:

**BY THE COURT**: Mr. Hill, the Court has a need for someone to serve as a spokesman from the jury to the Court, and I am going to appoint you as the spokesman. Mrs. Patterson will furnish you the exhibits, a clean sheet of paper.

Now, there is one instruction that has the forms of the three verdicts that this jury can return. All twelve of you must agree to a verdict. In the event all twelve of you do agree, refer to that instruction, track the exact wording onto the clean sheet of paper.

Would you come around now and receive these matters from the clerk? Would the jury, please, be retired.

The record reflects that after the jury was excused to deliberate, the trial court, court reporter, Clemons and all attorneys retired to chambers, whereupon the following discussion occurred:

**BY MR. WALLS**: Your Honor, when the Court submitted the case to the jury, the Court appointed a gentlemen, I've forgotten his name, as a spokesperson or foreman of the jury, and we object to that, and quite honestly, I will state to the Court I don't know what the law is. It has been my understanding that the jurors, once they enter into deliberations, select their own foreperson, and the way the Court did it, it could be inferred by some of the jurors that this gentleman has a higher responsibility and should be believed and listened to a little more than the other jurors, since the Court singled him out, and that is the basis of our objection, and we would move the Court to --

**BY THE COURT**: Do you have any offer of prejudice to the Defendant by reason of that, in the way of testimony?

**BY MR. WALLS**: No, Your Honor, we don't.

**BY THE COURT**: Or showing of prejudice, prejudice to the welfare of the Defendant?

**BY MR. WALLS**: Your Honor, we don't know, we can't offer any prejudice to that. The only thing, I guess -- nothing that we know of.

**BY THE COURT**: Do you move for a mistrial?

**BY MR. WALLS**: Your Honor, I think for the record, I have to.

**BY THE COURT**: All right. I am going to overrule your objection. This person, I named him as a spokesperson, told him I had a need for a person to serve as spokesman between the jury and the Court.

He asked to be relieved from jury service, because he was one of the managers of the office at U. S. Motors, the largest industry here in Neshoba County. His information sheet indicates he is an educated man, and on this jury, there are very few on there that were educated. I think there's only one lady on there that had any college at all.

I indicated this person to serve as a spokesperson, because I felt he was the most capable person to bring in a verdict from the jury to the Courtroom. He is a White male. There are six native

Americans, or Indians, on the jury. Of the six, I think there are only two that has a high school education, and I believe Mrs. Gail Bates, or whatever her last name is, is the only other juror who has any college.

So, considering all of the jurors, I think he is the most qualified person to serve.

Now, I am familiar with the rule you are talking about. It has been my practice, usually, to not appoint a person, but to let the jury select from among their number. In fact, I think I am the one that started this proceeding in *Johnson v. State,* requiring the jury to select someone as the spokesman, but in this particular case, it appeared to me the best thing to do was appoint this one person, because he seemed to be the only qualified person.

The State argues that Clemons failed to contemporaneously object when the trial court appointed the foreperson but instead waited until all had retired to chambers before voicing an objection; thus, the State argues Clemons waived any alleged error. *Mark v. State*, 532 So. 2d 976, 984 (Miss. 1988). Although there is some merit in this argument, Clemons has an even worse obstacle to hurdle. Clemons did not assign this error in his original appeal. Alleging reversible error over the trial court's appointing the foreperson was not assigned by Clemons until the filing of his rebuttal brief, which brief contained a frank admission by Clemons that the issue was not raised in his original brief. Issues cannot be raised for the first time in a rebuttal brief. *Sanders v. State*, 678 So. 2d 663, 669-70 (Miss. 1996).

Without waiving our procedural bar rules, we nonetheless hold this assignment substantially to have no merit. This trial concluded July 20, 1993. In effect at that time was former Rule 5.14 of the Uniform Criminal Rules of Circuit Court Practice which provided in pertinent part: "The court <u>may</u> direct the jury to select one of its members to preside over the deliberations. . . ." The identical language of this rule has been brought forward in Rule 3.10 of the Uniform Rules of Circuit and County Court. Obviously, the language of the rule connotes discretion in the trial court and certainly does not prohibit him from appointing the foreperson. No rule, statute, nor case prohibited the trial court's action at the time of this trial.

Since the date of trial in this case, our own Supreme Court has issued two opinions dealing with the foreperson appointment issue. *Hunter v. State*, 684 So. 2d 625 (Miss. 1996) (a death penalty case); *Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995) (a death penalty case). In *Ballenger*, one of the alleged errors raised was that the trial court appointed the foreperson of the jury. No objection was made at trial, the matter being assigned as error only after appeal. In holding the defendant procedurally barred from raising the issue for the first time on appeal, our Supreme Court stated, "[i]n the future, trial judges are advised not to appoint jury foremen. Who is to be the foreman is a decision which should be made by fellow jurors." *Ballenger*, 667 So. 2d at 1258-59.

Thereafter, in *Hunter*, our Supreme Court held an identical argument procedurally barred, repeated the advice of *Ballenger*, and observed that the advice was prospective.

Clemons complains about the remarks the trial court made regarding the make-up of the jury in commenting on his selection of the foreperson. The comments can readily be read as offensive by

some and certainly would require us to view the case differently if they had been stated in front of the jury, which fortunately they were not. The comments were made in chambers and outside of the jury's hearing. After appointing the foreperson, there was no further communication with the jury by the court until the verdict was returned into court.

Clemons could not advance at trial nor has he demonstrated in this appeal any meaningful argument as to how he was prejudiced by the trial court appointing the foreperson.

Without waiving the procedural bar, we hold on the merits there was no error. Finally, even were we to assume error, there has been no showing of prejudice.

**THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO CLEMONS.**

**BRIDGES, C.J., McMILLIN, P.J., PAYNE, AND SOUTHWICK, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN AND DIAZ, JJ. HERRING AND HINKEBEIN, JJ., NOT PARTICIPATING.**

IN THE COURT OF APPEALS

8/12/97

OF THE

STATE OF MISSISSIPPI

NO. 93-KA-00856 COA

DANYEL L. CLEMONS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

KING, J., DISSENTING:

I would respectfully dissent from the majority opinion offered herein:

At the close of arguments and jury instructions, the court appointed Mr. Hill as jury foreman. Clemons complains that the trial judge's appointment of the jury foreman foreclosed his right to a fair and impartial trial. Clemons specifically addresses the judge's use of impermissible criteria in appointing the jury foreman. In a dialogue between the judge and the defense counsel, the judge refers to Mr. Hill's race, gender, and education as determinative factors in making the appointment. The following is an excerpt of the dialogue:

MR. WALLS: Your Honor, when the court submitted the case to the jury, the court appointed a gentleman, I've forgotten his name, as a spokesperson or foreman of the jury, and we object to that, and, quite honestly, I will state to the court I don't know what the law is. It has been my understanding that the jurors, once they enter into deliberations, select their own foreperson, and the way the court did it, it could be inferred by some of the jurors that this gentleman has a higher responsibility and should be believed and listened to a little more than other jurors, since the court singled him out, and that is the basis of our objection, and we would move the court to --

THE COURT: Do you have any offer of prejudice to the defendant by reason of that, in the way of testimony?

MR. WALLS: Your Honor, we don't know, we can't offer any prejudice to that. The only thing, I guess -- nothing that we know of.

THE COURT: Do you move for a mistrial?

MR. WALLS: Your Honor, I think for the record, I have to.

THE COURT: All right. I am going to overrule your objection. This person, I named him as a spokesperson, told him I had a need for a person to serve as spokesman between the jury and the court. I recall a conversation this particular juror had with me on the first day he was summonsed to court. He asked to be relieved from jury service, because he was one of the managers of the office at U.S. Motors, the largest industry here in Neshoba County. His information sheet indicates he is an educated man, and on this jury, there are very few on there that were educated. I think there's only one lady on there that had any college at all.

I indicated this person to serve as a spokesperson, because I felt he was the most capable person to bring in a verdict from the jury to the courtroom. He is a White male. There are six native Americans, or Indians, on the jury. Of the six, I think there are only two that has a high school education, and I believe Mrs. Gail Bates, or whatever her last name is, is the only other juror who has any college.

So, considering all of the jurors, I think he is the most qualified person to serve. Now, I am familiar with the rule you are talking about. It has been my practice, usually, to not appoint a person, but to let the jury select from among their number. In fact, I think I am the one that started this proceeding in *Johnson v. State*, requiring the jury to select someone as the spokesman, but in this particular case, it appeared to me the best thing to do was appoint this one person, because he seemed to be the only qualified person.

Certainly, this colloquy and its implications deserve this Court's full attention. Our case law addressing this subject is very sparse. In fact we have only two cases of record that raised the court's appointment of a trial jury foreman as an assignment of error. Neither of these cases is analogous to the present case because the defendants failed to timely object to the court's conduct. In *Ballenger v. State,* 667 So. 2d 1242, 1258 (Miss. 1995), no objection was raised by the defense until after the jury had completed its deliberations on guilt, and was about to return to address the penalty phase of the case. In *Hunter v. State*, 684 So. 2d 625, 636-37 (Miss. 1996), the defense made no objection and did not raise an objection during post-trial motions. In both cases the defendants were procedurally barred from raising the argument on appeal. Nevertheless, the supreme court held prospectively that the jurors, not the court, should select the jury foreman. *Id.; Ballenger,* 667 So. 2d at 1258. "Who is to be the foreman is a decision which should be made by fellow jurors." *Hunter,* 684 So. 2d at 636 (quoting *Ballenger*, 667 So. 2d at 1258). Both *Hunter* and *Ballenger* were decided subsequent to the present case; therefore, the trial judge did not have the benefit of these decisions. Nevertheless I believe it was error for the trial judge to have appointed Hill as jury foreman in this case.

Unlike the defendants in *Ballenger* and *Hunter*, Clemons did not remain silent. Although the objection was not simultaneous, it was raised within a sufficiently contemporaneous period of time to allow the court to correct its error. As such, the underlying considerations for contemporaneous objections were met. Those considerations include avoiding costly new trials, allowing the offending party an opportunity to obviate the objection, and allowing the court the opportunity to rule on the objection. *Oates v. State*, 421 So. 2d 1025, 1030 (Miss. 1982). The record suggests that the following sequence of events occurred relative to the trial judge's appointment of the jury foreman:

1. The judge appointed a foreman and dismissed the jury to deliberate.

2. The jury immediately left the courtroom.

3. The judge and lawyers immediately left the courtroom.

4. The defendant immediately lodged an objection to the appointment of a jury foreperson.

There is no record of the time lapse between these events. However, it would not be a stretch of the imagination to suggest that no more than five minutes passed from the appointment of the foreman to the point of bringing it to the court's attention. Within this time frame, no real jury deliberation had begun, and the court could have easily recalled the jury to correct its error. The contemporaneous objection requirement is not a static rule, particularly where the objection is not to an evidentiary matter, but to the basic right to a fair and impartial trial. The record indicates that the victim was a white male, and that allegations of racial animosity led to the killing. When viewed in context, the trial judge's actions and comments along with the events preceding the court's appointment raise a question about the overall fairness of the trial, and whether the net impact has impaired a fundamental right. I believe that it has.

As such I would hold that the trial judge both exceeded the intention of section 13-5-1 of the Mississippi Code and violated Clemons' rights ensured by Sections 14 and 26 of the Mississippi Constitution.

First, section 13-5-1 of the Mississippi Code establishes the relevant criteria that the presiding judge shall use to determine the competency of jurors. According to the statute:

Every citizen not under the age of twenty-one years, who is either a qualified elector, or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror.

Miss. Code Ann. § 13-5-1 (1972). While the statute mentions several necessary qualifications, it does not require jurors to be of a particular race or sex, nor does it require jurors to have a college education. In fact, the statute specifically states that jurors are competent if they have the ability to read and write. *Id.* Thus, the trial court's rationale for selecting Mr. Hill as jury foreman is contrary to the mandate of the statute. In fact, the court specifically seemed to call into question the competency of the six Native American jurors. If the court considered the impaneled jurors incompetent to return a verdict, then the court should have dismissed the panel.

The court, by it's own admission, selected the sole white male, who was in the court's opinion the most educated and professional individual, to serve as the liaison between the court and the jury.

The court's designation of Mr. Hill as foreman placed the court's stamp of approval upon his actions or arguments during deliberations and impinged upon the customary independence of each individual juror. *Dorshkind v. Harry N. Koff Agency, Inc.*, 134 Cal. Rptr. 344, 347 (1976). Such judicial interference necessarily conveys the impression that the court had singled out one juror and placed its

imprimatur on his words and actions. *Id.*

Finally, the trial court abridged Clemons' constitutional right to a fair and impartial trial under the Mississippi Constitution. The constitution unquestionably guarantees the criminal defendant a fair and impartial trial without which the State cannot deprive the defendant of life or liberty. *See* Miss. Const. art. III, §§ 14, 26. This right to a fair and impartial jury is the hallmark of the Mississippi judicial system. *Mhoon v. State,* 464 So. 2d 77, 80 (Miss. 1985). While the constitution does not guarantee a trial without flaws, it does provide for a fair trial. *Fulgham v. State*, 386 So. 2d 1099, 1100 (Miss. 1980). The trial court may not have intended to prejudice Clemons, but the nature of the appointment created an atmosphere ripe for prejudicial influence. From the outset, the case had significant racial overtones because of the victims alleged use of racial slurs and pre-trial publicity surrounding the killing of a white male by a black male. These facts alone signified the need to guard against any hint of partiality. However, the court used impermissible criteria such as race, employment, gender, and education to pronounce Mr. Hill as the "most qualified" person to preside over the deliberations. Clearly, the court intended to use Mr. Hill to lead the other "unqualified" jurors. I am concerned that those jurors attached some inflated importance or gave undue deference to the opinions of Mr. Hill. Such acquiescence is unacceptable. A jury must remain neutral and impartial in carrying out its responsibility of deciding the guilt or innocence of the defendant. *Mhoon,* 464 So. 2d at 81 (Miss. 1985).

While the jury was not present during the court's discussion with defense counsel, it is the court's appointment and the fact that the court anticipated a need for a juror with the "qualifications" held by Mr. Hill that raise a question of impartiality. *See Dorshkind*, 134 Cal. Rptr. at 347 (trial judge's selection of a jury foreman constitutes an inherent danger to the inviolateness of the jury system). The court must protect the criminal judicial system from even the appearance of partiality. "If [the jury was] exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption." *Fulgham*, 386 So. 2d at 1101 (quoting *Green v. State*, 97 Miss. 834, 838 (1910)). Thus, I conclude that the lower court interfered with the jury's independence and created the appearance of partiality that abridged Clemons' right to a fair and impartial trial. For the foregoing reasons, I would reverse and remand for a new trial.

**COLEMAN AND DIAZ, JJ., JOIN THIS DISSENT.**