755 So.2d 443 (1999)
John Wayne EDWARDS and Margie Ann Edwards, Appellants,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00434 COA.
Court of Appeals of Mississippi.
February 9, 1999.
Rehearing Denied April 20, 1999.
Certiorari Denied August 5, 1999.
*444 Robert N. Brooks, Carthage, Attorney for Appellants.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
Before McMILLIN, P.J., and COLEMAN and PAYNE, JJ.
McMILLIN, P.J., for the Court:
¶ 1. This case is an appeal from the conviction of John Edwards and Margie Edwards for culpable negligence manslaughter in the death of their four year old child, who drowned during a camping trip on a sandbar below Low Head Dam on the Pearl River. We reverse and render.

I.

Facts
¶ 2. John and Margie Edwards, together with their three children and a number of friends, went on a camping and boating excursion in Scott County. The participants set up a camping area on a sandbar on the Pearl River. They engaged in such activities as swimming and boating and *445 had built a campfire on the sandbar. Tragically, at about 2:00 a.m., Michael Edwards, the four year old child of the defendants, was discovered to be missing. The child's body was recovered from the river early the next morning and the cause of death was determined to be fresh water drowning.
¶ 3. John and Margie Edwards, along with another participant in the outing, Norman Beaugez, were indicted for culpable negligence manslaughter under Section 97-3-47 of the Mississippi Code of 1972. The indictment, though meeting the barebones provisions of Section 99-7-37 to charge the crime of manslaughter, stated only that the defendants "did unlawfully, feloniously, by culpable negligence, and without authority of law, kill Michael Wayne Edwards...." Because of the form of the indictment, the particular facts relied on by the State to substantiate a charge of culpable negligence must be found elsewhere. We will consider the evidence presented by the State separately as to each of these defendants.

A.

John Edwards
¶ 4. Taking the evidence in the light most favorable to the State, the facts reflect only that John Edwards had left the camping site to go on a boating excursion in the company of several other persons. It was during his absence that the child was discovered to be missing and John Edwards returned only in time to participate in the futile efforts to locate the boy.

B.

Margie Edwards
¶ 5. Taken in the light most favorable to the State, the facts showed that Margie Edwards was, during the critical times of this case, sitting near the campfire and may have been somewhat inattentive to the whereabouts of four year old Michael Edwards. There was also evidence presented that other adult members of the group were taking Michael into the water. All of the State's witnesses agree that the last time anyone saw Michael, he was being carried in the water on the shoulders of Norman Beaugez. There was some testimony, though it is was rather vague, that Norman Beaugez then emerged from the water without Michael being with him. All of the witnesses except one testified that, during this time, Margie Edwards was sitting near the campfire engaged in conversation with other members of the group. That one witness testified that Ms. Edwards was, during the time leading up to Michael's disappearance, devoting her attention to her ten year old daughter, who was said to have injured her foot.

C.

Norman Beaugez
¶ 6. At the close of the prosecution's case, the trial court concluded that the evidence was insufficient as a matter of law to sustain a conviction against Norman Beaugez but refused to dismiss as to the parents. In doing so, the trial court stated that "the only testimony this jury has heard pursuant to this indictment is that on this occasion, shortly before the disappearance of the child, the child was on his [Beaugez's] shoulders in the water, there being no evidence in addition to that other than that one incident."

II.

Discussion
¶ 7. Mr. and Mrs. Edwards raise several issues on appeal, one being that the proof was insufficient as a matter of law to prove their culpable negligence in the death of their son. As we have observed, the indictment in this case was uninformative as to what action or inaction on the part of these defendants constituted the culpable negligence that proximately caused Michael Edwards's death. On its face, such an indictment would appear to run afoul of the provisions of Uniform Circuit and *446 County Court Rule 7.06 that an "indictment... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation;" however, the statute regarding homicide indictments specifically permits a charge to be brought in this manner. Miss.Code Ann. § 99-7-37 (Rev.1994). Nevertheless, the fact that the State is permitted to charge manslaughter with conclusory and essentially fact-free language does not permit the State to convict without some coherent theory of its case supported by the underlying evidence to support that theory.
¶ 8. It is at this point that difficulties begin to emerge in this particular case. The State chose not to outline its theory of culpable negligence prior to beginning to call witnesses since there were no opening statements. At the close of the prosecution's case, the State, in resisting a motion for directed verdict, could only argue that these parents had "the responsibility to shoulder the burden to make sure the child is not out in pitch black dark at 2:00 o'clock in the morning, swimming in an area where the current apparently was swift enough to almost drag another one of their older children into the water to drown." The State also suggested that the failure to require the child to use a flotation device and Mr. Edwards's decision to leave the child on the sandbar to take a boat ride were also acts that would support a finding of culpable negligence sufficient to convict for manslaughter.
¶ 9. The trial court, in denying these defendants' directed verdict motions, said that "[t]o take a small four year old child on a sandbar at 2:00 o'clock in the morning and go swimming, with no lights, no safety precautions, such as life vests or other devices, aware the child could not swim..." was enough, in itself, to create a jury issue on a charge of culpable negligence manslaughter.
¶ 10. The specific acts of negligence attributable to these parents, according to the State's case, did not change in final summation. The prosecuting attorney could only say that taking this young child on this excursion near a river without adequate lighting and without requiring the child to have on a flotation device was, of itself, such negligence as would rise to the level of criminal culpable negligence.
¶ 11. For the first time on appeal, the State suggests several alternative acts of negligence that could have formed the basis for the jury's guilty verdict. They include matters such as the father's fatigue from lack of sleep, participating in boat rides when the pilot of the boat was intoxicated, entrusting the child's care to members of the group who had been drinking beer, and simply being around a group of people who were consuming beer. The obvious problem with these alternative theories, beside the fact that they were not argued to the jury, is that none of them even arguably proximately contributed to the death of Michael Edwards. Thus, though they may give rise to legitimate cause to castigate these parents, they cannot form the basis to sustain a conviction of culpable negligence manslaughter.
¶ 12. The best clear chance the State had to outline its theory of the case and to define with some certainty those actions that constituted the culpable negligence that proximately led to Michael Edwards's death was in the jury instructions. In fact, such instructions were essential to a fair trial, since it is the purpose of the instructions to inform the jury of the pivotal facts on which the issue of guilt must turn and what verdict the law requires depending on how the jury resolves these crucial issues of fact. Lamar v. State, 64 Miss. 428, 1 So. 354, 355 (1887). Again, in its requested instructions, the State wholly failed to articulate a coherent fact-based theory of culpable negligence. None of the instructions even purport to set forth any specific act or failure to act by either of these defendants that would, if established by the proof, support a finding of culpable negligence. Instead, the jury was *447 merely given a definition of culpable negligence in the most general terms and then told that, if they concluded that the defendants caused Michael's death by culpable negligence, it was their duty to convict.
¶ 13. We conclude that, beyond question, the instructions offered to the jury in this case were so defective as to deny Mr. and Mrs. Edwards a fundamentally fair trial. Though the trial court is entitled to rely upon counsel for the State and the defense to present proposed instructions that accurately inform the jury as to what facts are being submitted to it for resolution and what result the law requires depending upon how the jury resolves those critical facts, ultimately the responsibility for properly instructing the jury lies with the trial court. Newell v. State, 308 So.2d 71, 78 (Miss.1975). The sparse instructions given in this case, setting "culpable negligence" as the standard to convict, but never identifying what specific actions or inactions by these defendants could legally rise to the level of such criminal negligence, left the jury to the widest field of speculation as to whether these parents' culpable negligence caused the death of their child. The State's argument on appeal, in itself, points out the problem with the manner in which this case was tried. By offering what is, in essence, a grab bag of possibly negligent acts and suggesting that any one or more of these parental failings would support a finding of culpable negligence, the State exposes the danger that this verdict could very well be simply an amalgamation of different views by separate jurors rather than the unanimous verdict necessary to convict in a criminal case. Some jurors may have decided that the absence of adequate lighting demonstrated the negligence. Some could have concluded that the failure to require the child to wear a flotation device was the triggering act of negligence. Others could have felt that evidence that the child was exposed to an environment where alcoholic beverages were being consumed justified conviction.
¶ 14. It is evident that the State, in this case, lacked a cohesive theory of what particular action or inaction by these defendants constituted culpable negligence. Instead, the State was content to use every available bit of evidence to cast this outing in the worst possible light and then submit the issue of the parents' criminal culpability to an essentially uninstructed jury in way that permittedeven required the jury to resolve the difficult issues guided by nothing more than their own instincts and emotions. Such a means of imposing criminal liability on a person does not comport to the strict standards necessary to deprive a person of his or her liberty.
¶ 15. We find these instructions so deficient on their face as to require us to note them as plain error which would require reversal.
¶ 16. The only issue, then, before us is whether, under any rational theory, the State presented sufficient evidence to get this case to the jury. If so, our duty would be to reverse and remand for a new trial at which the jury would, hopefully, be better instructed on those particular facts that the State relied on to demonstrate the criminal negligence of these defendants. On the other hand, if there is no theory of negligence that can be articulated that would, even if the facts to establish this purported negligence could be proven beyond a reasonable doubt, support a criminal conviction, then the failure of the State's case would be more basic than the unsatisfactory manner in which the jury was instructed, and our duty would be to reverse and render.
¶ 17. On the largely undisputed facts of this case, we are satisfied that the only possible theory of negligent behavior on the part of these parents that could give rise to a finding of criminal culpability would be the very act of bringing the child on this excursion in the first place. In essence, the theory would be based on the proposition that the overall situation was *448 so inherently dangerous that, once having exposed the child to the inherent risks in such an outing, no safety precautions subsequently undertaken would be sufficient to relieve the parents of criminal responsibility in the event something untoward happened to the child.
¶ 18. In Scott v. State, the Mississippi Supreme Court defined "culpable negligence" as "that degree of negligence or carelessness which is denominated as gross negligence and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under same circumstances as to furnish evidence of indifference to consequences." Scott v. State, 183 Miss. 788, 185 So. 195, 196 (1938). In Campbell v. State, the supreme court said that culpable negligence involved the "conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk." Campbell v. State, 285 So.2d 891, 893 (Miss.1973) (citations omitted).
¶ 19. This Court is of the opinion that the mere act of taking a child on a camping excursion to an area by a river does not, of itself, demonstrate such an indifference for the safety of the child as to rise to the level of culpable negligence for purposes of a criminal manslaughter charge. Neither do we conclude that demonstrating the close proximity of the river to the camping area is enough, standing alone, to criminalize a custodial parent's failure to require that parent's children to wear a flotation device.
¶ 20. Thus, as to John Edwards, we are left with the proposition that he departed the campsite, leaving his son in the apparent care and control of the child's mother and returned a short time later to discover that, in his absence, a terrible but largely unexplained tragedy had occurred. There simply is no conceivable argument that can be advanced that Mr. Edwards's election to entrust the physical care of Michael Edwards to the child's mother while he went on a brief excursion in a boat was an act of culpable negligence that proximately caused Michael Edwards's death. This Court is of the opinion that the proof in this case quite dramatically falls short of being sufficient to sustain John Edwards's guilty verdict and we reverse and render the judgment entered on the jury's verdict.
¶ 21. As to Margie Edwards, the proof, taken in the light most favorable to the State, indicates that she was content to entrust the care of her four year old son to another adult member of her group, Norman Beaugez, and that Beaugez had taken Michael onto his shoulders and waded out into the river. There is no evidence that Beaugez was intoxicated or, in any other way, unfit to temporarily tend to the child's welfare. Again, this Court is satisfied that this act of entrustment of the care of the child to another person, absent some evidence clearly demonstrating its inadvisability, cannot by any logical argument be said to constitute such a reckless indifference for the well-being of the child as to expose Ms. Edwards to criminal liability simply because, under circumstances that have yet to be fully explained, the child mysteriously disappeared and was discovered, hours later, to have drowned.
¶ 22. The State, in addition to presenting evidence that might at least arguably point toward some coherent theory of culpable negligence on the part of one or both of Michael Edwards's parents, persisted in injecting into the trial evidence that some members of the group were drinking alcoholic beverages and that the group was so boisterous in its conduct that a nearby fishing enthusiast became disgusted by the group's conduct and felt compelled to move to a new location. Certainly, this evidence may have served the purpose of prejudicing these defendants in the eyes of the jury, but as to the central issue of this case, such evidence had essentially no probative value. There was absolutely no evidence that either defendant (or Norman *449 Beaugez) had ingested any alcohol, much less such an amount as to impair any of these individuals' ability to function. There was no evidence that intoxication or impairment of any other member of group contributed in any way, directly or indirectly, to the drowning of Michael Edwards.
¶ 23. The death of Michael Edwards by drowning was a tragic occurrence. Others, with the benefit of hindsight, can easily point to any number of precautions that, had they been instituted, might have spared this young child's life. There is, unquestionably, some degree of blameworthiness that must attach to these defendants' decision to expose Michael to those risks of injury that were inherent in this outing. However, to say that the decision to attend this event and take Michael and his siblings demonstrated such a reckless indifference to Michael's welfare as to impose criminal sanctions against these parents is quite another thing. We are satisfied that these convictions may not be permitted to stand.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, KING, and SOUTHWICK, JJ., CONCUR.
LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PAYNE, J.
IRVING, J., NOT PARTICIPATING.
LEE, J., dissenting:
¶ 25. Finding the majority opinion to be in conflict with a prior decision of the Mississippi Supreme Court, I respectfully dissent. It is my opinion that the majority is incorrect in holding that the State of Mississippi failed to articulate a cohesive fact-based theory of culpable negligence in this case.
¶ 26. The majority asserts that the State failed to prove its case of culpable negligence manslaughter since it did not demonstrate that a specific act or failure to act on the part of John and Margie Edwards caused the death of their four-year-old child, Michael Edwards. There is no question that the evidence is conflicting as to how the drowning occurred. However, such evidence is not necessary to establish guilt based on culpable negligence in this State. Jones v. State, 678 So.2d 707, 710 (Miss.1996). In that case, where the facts were not clear as to how cocaine was found in the system of an eleven-month-old child, the court found that it was the presence of the substance in the child's system and not necessarily the way in which it got there that evidenced culpable negligence. It follows that this "terrible but largely unexplained tragedy," as described in the majority opinion, need not necessarily be explained in order to establish guilt on the part of the Edwards on the basis of culpable negligence and that the State is not thus required to prove that a specific act or failure to act by the parents actually caused the death of their child.
¶ 27. The majority found that the problem with the State's case is that by offering "a grab bag of possibly negligent acts and suggesting that any one of these parental failings would support a finding of culpable negligence, the State thereby exposes the danger that the verdict could be an amalgamation of different views by separate jurors rather than a unanimous verdict that is necessary to convict in a criminal case." The flaw in this reasoning is that the State was not offering these negligent acts as evidence of acts that specifically caused the child to drown. Rather, these negligent acts and failures to act were offered as evidence that the environment at this outing was one encumbered with risks and dangers creating a ripe setting for a tragedy such as the one that actually did happen.
*450 ¶ 28. It was a reasonable probability and should have been anticipated that in such an environment a four-year-old child could not only fall into or enter the water but also be unretrievable for rescue and drown as a result. The Edwards recklessly disregarded this risk and the probability of fatal consequences to their child as a result of their having willfully placed him in an environment that they themselves created for him. This, according to Campbell v. State, 285 So.2d 891 (Miss.1973), constitutes culpable negligence. In that case the Mississippi Supreme Court stated that culpable negligence involved "the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk." Campbell, 285 So.2d at 893.
¶ 29. I do agree with the majority that the mere act of taking a child on a camping excursion to an area by a river does not, in and of itself, demonstrate such an indifference for the safety of a child as to rise to the level of culpable negligence. I also agree that the close proximity of the river to the camping area, standing alone, is not enough to criminalize the parents' failure to require that the child wear a floatation device. It is another matter, however, to take a four-year-old child who cannot swim on such an excursion, where he is awakened from sleep at the river's edge at 2:00 in the morning by teenagers to be taken into the water for "horseplay" in the darkness with no floatation device and with no adult assuming the responsibility of supervision, where the river has a strong current and an intoxicated driver is operating a boat in the area. With these factors added, it is no wonder that Michael Edwards mysteriously disappeared.
¶ 30. The majority opinion states that "the only possible theory of negligent behavior on the part of the parents that could give rise to a finding of criminal culpability would be the very act of bringing the child on this excursion in the first place. This would be based on the proposition that the overall situation was so inherently dangerous that, once having exposed the child to the inherent risks in such an outing, no safety precautions subsequently undertaken would be sufficient to relieve the parents of criminal responsibility in the event something untoward happened to the child." The problem here is that there is no evidence that any safety precautions whatsoever were undertaken by the parents. The use of a floatation device alone, even one that did not conform to regulatory standards, all other circumstances being the same, could have indicated that Michael's safety was regarded at least to some degree. This in itself could have been evidence that the Edwards were not guilty of culpable negligence under the definition in Campbell. It could also have provided evidence that there was not a total indifference to consequences so that the parents would not have been considered guilty of culpable negligence according to the definition given in Scott v. State, cited in the majority opinion. Had there been evidence clearly showing that an older child, such as fifteen-year-old Victoria Diamond, had been explicitly asked to supervise the child so that the parents could visit with others for a while or go on a boat ride, as they did, such could also have indicated some regard for Michael's safety. However, the evidence does not show this. Michael Edwards was only four years old and was referred to as "the baby" in the testimony of two witnesses. An ordinarily careful and prudent person knows that taking one's eyes off a child of this age for even a moment is opportunity for mischief. This is why areas housing young children are often "childproofed," to minimize the likelihood that an accident will happen. This environment was hardly "childproofed" to any degree, rather, it all but insured fatal consequences and the mother did not thus have the luxury of being able to turn her back on Michael for a moment for any reason without being found culpably negligent.
*451 ¶ 31. As to the culpability of John Edwards, the court found him to be absolved of any fault because he went on a boat ride and entrusted the care of the child to the child's mother. The Mississippi Supreme Court in Campbell, 285 So.2d at 894 (citing State v. Fennewald, 339 S.W.2d 769 (Mo. 1960)), stated that where two drivers were racing automobiles, they entered into such an agreement with a common design to commit an act dangerous to the lives of others, and they did so carelessly, recklessly, and feloniously with culpable negligence. Campbell, 285 So.2d at 894 (citing Jacobs v. State, 184 So.2d 711 (Fla.App. 1966)), found that the active participants were all guilty of the criminal act which caused the death of the innocent party even though only one participant actually drove the car that killed the bystander. It is therefore my opinion that both John Edwards and his wife, Margie Edwards, were responsible for taking Michael to the campout and exposing him to the risks that ultimately led to his death without having taken any precautions to show regard for his safety. For these reasons, I respectfully dissent.
PAYNE, J., JOINS THIS SEPARATE WRITTEN OPINION.