822 So.2d 1022 (2002)
Troy CARLISLE a/k/a Troy Lee Carlisle, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01796-COA.
Court of Appeals of Mississippi.
March 19, 2002.
Rehearing Denied June 11, 2002.
*1024 Jack R. Jones, III, Southaven, attorney for appellant.
Office of the Attorney General, by Jean Smith Vaughan, attorney for appellee.
Before McMILLIN, C.J., BRIDGES, and IRVING, JJ.
BRIDGES, J., for the Court.

PROCEDURAL HISTORY
¶ 1. Troy Carlisle was indicted for depraved heart murder in the Circuit Court of DeSoto County in May of 2000. A change of venue was granted, and the case was tried in Rankin County, Mississippi, with the Honorable George B. Ready presiding. Carlisle was convicted by a jury of *1025 his peers for the lesser-included offense of manslaughter and sentenced to twenty years in the custody of the Mississippi Department of Corrections. Following the denial of all post-trial motions, Carlisle perfected his appeal and comes before this Court citing four issues of error:
I. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE MOTION TO SUPPRESS CARLISLE'S STATEMENT;
II. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-1;
III. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DIRECTED VERDICT MOTION, PEREMPTORY INSTRUCTION AND REQUEST FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL; AND
IV. THE TRIAL COURT ERRED IN FAILING TO GRANT CARLISLE'S CIRCUMSTANTIAL EVIDENCE INSTRUCTION.
¶ 2. Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 3. On May 7, 2000, Kenny Peeples, Troy Carlisle, Dallas (age seven) and Garrett (age four) went to the Arkabutla Lake for a day of fishing. The Arkabutla Lake is located in north Mississippi and is known for its high winds. On the day in question, the lake was experiencing extremely high winds, in excess of twentyfive miles per hour. It was the plan of this group to fish in an area known as Mussacuma Creek where the water is shielded from the winds.
¶ 4. The group fished at the Mussacuma Creek for about four and one-half hours and then decided to take the children to a different area of the lake called "the island" for swimming. As they were leaving the creek area, the starter on the boat malfunctioned. Kenny was examining the engine, attempting to correct the problem and told Dallas and Garrett they could sit at the end of the boat where a small ski deck protruded out on either side of the outboard motor, and dangle their feet in the water. The boat was stalled in the area of the lake where the winds were high and the water had swells up to two feet. The children were wearing life jackets or vests, but the adults were not.
¶ 5. As the adults were working on the engine, Dallas decided to go for an unpermitted swim. She jumped into the water, just off the back of the boat, and Garrett followed her. Garrett jumped out away from the boat, and knowing Garrett could not swim, Kenny jumped in after Garrett and told Carlisle to go after Dallas. Carlisle's statement to the police indicated he was not a good swimmer, but jumped in anyway to try to save Dallas. Testimony revealed that in a short time, all parties involved were in a state of panic. The now empty boat was pushed far away from the people by the wind.
¶ 6. Kenny testified that he reached Garrett, tightened his life vest, turned him on his back and told him to cross his arms over his chest. Kenny then swam over to Carlisle and Dallas and did the same procedures to Dallas. Kenny testified that he knew this would protect the children from drowning. During these safety measures, the boat had drifted to near "the island" area of the lake. Kenny attempted to swim to the boat; however, the swim was against the swift current and he was not able to reach it. Therefore, Kenny decided to swim to the shore for help and told Carlisle to swim with him. Kenny testified that Carlisle said that he could not do it and was scared. Carlisle decided to swim against the current toward the island and Kenny swam toward the shore for help. Kenny testified that he could hear *1026 Dallas screaming and telling Carlisle to stop drowning her. Kenny further testified that the screams stopped.
¶ 7. Kenny found help from a fisherman and got the fisherman to take him back out into the water so he could get the others. The fisherman and Kenny reached Garrett first and pulled him in the boat. Kenny then saw Carlisle sticking his hand out of the water, so they went to him next. Carlisle got into the boat and when asked about Dallas, he said he had not seen her in a while. The fisherman tried to steer the boat away, but was unable to do so because the motor locked up. When the motor was pulled out of the water, Dallas's life jacket was wrapped up in the prop.
¶ 8. The search and rescue for the child lasted for two days. At noon on the day following the accident, Carlisle asked to speak to the sheriff's deputies on the scene. He then went to the sheriff's department, gave a confession telling how he removed Dallas's life jacket to save himself, and then was arrested. Carlisle was charged with depraved heart murder for the death of Dallas but was convicted by a jury of the lesser-included offense of manslaughter.

LEGAL ANALYSIS AND STANDARD OF REVIEW

I. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE MOTION TO SUPPRESS CARLISLE'S STATEMENT.
¶ 9. A suppression hearing was held prior to trial, attempting to exclude the statements made by Carlisle. There was one audio taped confession, one written statement and one statement spoken to a detective which the detective wrote down. All confessions were signed by Carlisle and gave details of how he removed Dallas's life jacket. The verbal statement confessed that Carlisle knew that "the moment [he] took the flotation device off Dallas, that [he] would survive and she would not. [He] knew that at least [he] would have a better chance to survive or make it to safety." The suppression hearing was primarily an attempt to exclude the verbal statement given to the detective which was later reduced to writing.
¶ 10. Carlisle asserts that his confessions, specifically the verbal statement, were improperly admitted. Carlisle denies making the verbal statement as it was presented to him. The State rebuts that the judge looked at the totality of the circumstances and determined that his confessions were voluntarily made.
¶ 11. When the trial court has denied a motion to suppress a confession, this Court will reverse the trial court's decision only if the ruling is manifest error or contrary to the overwhelming weight of the evidence. Palm v. State, 748 So.2d 135, 142 (¶ 25) (Miss.1999) (citing McGowan v. State, 706 So.2d 231, 235 (Miss. 1997)). We will not reverse a trial court finding that a confession was voluntary and admissible as long as the correct principles of law were applied and the finding is factually supported by the evidence. Palm, 748 So.2d at 142 (¶ 25). See also Greenlee v. State, 725 So.2d 816, 826 (¶ 26) (Miss.1998). Where the evidence is contradictory, this Court "generally must affirm." Lesley v. State, 606 So.2d 1084, 1091 (Miss.1992).
¶ 12. Carlisle approached the sheriff's deputies at the scene. He volunteered to speak with the authorities. Carlisle, who was not under arrest, agreed to go to the sheriffs department for further questioning. Carlisle properly received and waived his Miranda warnings upon arrival at the sheriffs department. Carlisle gave the detectives a written statement and a verbal *1027 statement which was audio taped. Two detectives were present during these confessions, Chief Detective Mark Blackson and Detective Clyde Gunter. After the taped verbal confession was concluded, Detective Blackson left the room, leaving Carlisle in the room with only Detective Gunter. During this time, the two men began a casual conversation which led to more talk about the drowning. Detective Gunter testified that if Carlisle said something important he would write the statement down. Detective Gunter further testified that he got Carlisle's permission to write the statement down. After their conversation ended, Detective Gunter had Carlisle sign the document labeled "voluntary statement."
¶ 13. At the suppression hearing, Carlisle asserted that he was under the influence of marijuana and the prescription drug Valium and therefore his statements were not voluntary. The time span between taking the drugs and when the statements were made was some fourteen and one-half hours. Carlisle testified that the marijuana would no longer be affecting his senses but that the Valium would be. This contention is clearly without merit. As stated by the trial judge, there was no proof or corroborating evidence that Carlisle even subjected himself to these drugs.
¶ 14. Carlisle argues that he should have been read his Miranda rights after the conclusion of the taped interview. This is not the law in Mississippi. Our supreme court has stated that Miranda does not require "that a criminal defendant be advised of his rights every time there is a brief pause in questioning. Miranda simply requires that `[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'" Taylor v. State, 789 So.2d 787, 793-94 (¶ 27) (Miss.2001) (quoting Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Baldwin v. State, 757 So.2d 227, 235 (¶ 31) (Miss.2000)). Carlisle properly received his Miranda rights before he gave the first statement. The second verbal statement was a continuation of the original interview. Only minutes passed between one statement and the next. There was no need for the authorities to give Carlisle his Miranda rights again.
¶ 15. Carlisle further contends he did not make the statement to Detective Gunter which was reduced to writing. "Once there is credible proof that such a statement was made, evidence of the contents of the statement is admissible. The fact that the defendant denies having made the statement does not affect the threshold question of the admissibility of the purported statement." Cobb v. State, 734 So.2d 182, 185(¶ 7) (Miss.Ct.App.1999). Detective Gunter testified that he was in the room when the statement was made. Detective Gunter additionally testified he wrote the confession and placed his initials on the page. Furthermore, Detective Blackson, upon entering the room again, reread the statement as it was written to Carlisle before Blackson signed the paper. Carlisle finally signed the paper, stating that he did make the statement. Credible evidence was presented to the trial judge and the fact that Carlisle now has selective memory is not an issue to this Court. The assignment of error is without merit.

II. WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-1.
¶ 16. Carlisle contends that the lower court erred in granting instruction nine, also known as instruction S-1, for failure to apply the elements of the charge to the defendant. The State argues that *1028 Carlisle made no objection at trial and therefore the matter is waived on appeal.
¶ 17. The instruction detailed the elements of two crimes, depraved heart murder and the lesser-included offense of manslaughter. "It is rudimentary that the jury must be instructed regarding the elements of the crime with which the defendant is charged." Reddix v. State, 731 So.2d 591, 592 (¶ 4) (Miss.1999) (quoting Hunter v. State, 684 So.2d 625, 635 (Miss. 1996)). The elements were specifically set forth and the instruction was valid.
¶ 18. Carlisle offered no objection at trial to the granting of this instruction. On appeal, he is arguing plain error. He argues culpable negligence was not defined. We agree it was not defined in instruction nine to the jury, but it was defined in instruction number ten. Instructions to the jury are to be taken collectively rather than be given individual consideration. Detroit Marine Eng'g v. McRee 510 So.2d 462, 467 (Miss.1987). "So long as all the instructions read together adequately and properly instruct the jury on the issues, an individual instructions given to the jury will not constitute reversible error." Id. Furthermore, the absence of a contemporaneous objection precludes appellate review. Ratliff v. State, 313 So.2d 386, 388 (Miss.1975). "Errors based on the granting of an instruction will not be considered on appeal unless specific objections stating the grounds are made in the trial court." Oates v. State, 421 So.2d 1025, 1030 (Miss. 1982) (quoting Collins v. State, 368 So.2d 212 (Miss.1979)). Should no objection appear in the record, this Court will presume that the trial court acted properly. Moawad v. State, 531 So.2d 632, 635 (Miss. 1988).
¶ 19. This assignment of error is without merit.

III. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THE DIRECTED VERDICT MOTION, PEREMPTORY INSTRUCTION AND REQUEST FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL.
¶ 20. Carlisle asserts that the trial court incorrectly denied his motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. A motion for JNOV challenges the legal sufficiency of the evidence supporting the guilty verdict. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Butler v. State, 544 So.2d 816, 819 (Miss.1989). A motion for new trial challenges the weight of the evidence. McClain, 625 So.2d at 781.
¶ 21. Our standard for reviewing challenges to convictions based on sufficiency of the evidence is well established. The Mississippi Supreme Court has stated:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury.
Id. at 778. We reverse when, with respect to an element of the offense charged, the evidence is such that reasonable and fairminded jurors could only find the accused not guilty. Id.; Wetz v. State, 503 So.2d 803, 808 (Miss.1987).
¶ 22. The standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence is also well settled. "[T]his Court must accept as true the evidence which supports the verdict and will reverse only *1029 when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collins v. State, 757 So.2d 335(¶ 5) (Miss.Ct.App.2000) (citing Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss. 1998)). On review, the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Collins, 757 So.2d at 337(¶ 5) (citing Griffin v. State, 607 So.2d 1197, 1201 (Miss. 1992)). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Collins, 757 So.2d at 337(¶ 5) (quoting Dudley, 719 So.2d at 182).
¶ 23. Carlisle argues that the evidence presented by the State was not sufficient to warrant a guilty verdict. He contends that this was a horrible accident and no criminal ramifications should come of it. Carlisle directs this Court to Edwards v. State, 755 So.2d 443 (Miss.Ct. App.1999), as authority. The facts of Edwards are similar in that a family outing turned tragic in the death of a child. However, Edwards is distinguishable from this case. The facts from Edwards show that a family was camping on a sandbar of the Pearl River and sometime during the night, the child wandered into the water and drowned. The parents were indicted for culpable negligence manslaughter. The State attempted to use the lack of good sense on behalf of the parents as evidence but did not specifically set forth any elements to prove culpable negligence. This Court reversed and remanded for that reason. Edwards, 755 So.2d at 447(¶ 13). In the case at bar, Carlisle has admitted numerous times to removing the child's life jacket to save his own life. Culpable negligence, as defined to the jury by the instructions, is conduct which exhibits or manifests a wanton or reckless disregard for the safety of human life, or such indifference to the consequences of the defendant's acts under the surrounding circumstances as to render his conduct tantamount to wilfulness. Carlisle consciously decided to remove the child's life jacket and he knew that without it, the child would not survive. This evidence was put before the jury and it was their job to determine the guilt or innocence of Carlisle. The credibility of witnesses and the weight and value of their testimony are to be determined by the jury. Burrell v. State, 613 So.2d 1186, 1192 (Miss.1993). This Court does not serve as a new jury. We do not reevaluate the evidence and determine what we would have done in the jury's place. As stated in Henson v. Roberts:
The demeanor or bearing, the tone of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject; therefore unless it is clear to this Court that the verdict is contrary to the overwhelming weight of the credible testimony, this court will not set aside the verdict of a jury.
Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996).
¶ 24. It is apparent from the record that there was abundant evidence presented during trial implicating Carlisle's guilt. Accepting as true all evidence favorable to the State, the record shows that Carlisle admitted to removing the life jacket from the child more than once. When reviewing the evidence in the light consistent with the verdict and giving the State all favorable inferences which may be drawn from the evidence, this Court finds that *1030 the verdict was not against the overwhelming weight of the credible testimony. Accordingly, this issue lacks in merit, and the verdict of the jury will not be disturbed.

IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT CARLISLE'S CIRCUMSTANTIAL EVIDENCE INSTRUCTION.
¶ 25. Carlisle argues that all evidence in his case was circumstantial and therefore a circumstantial evidence instruction should have been submitted to the jury. The State contends that because Carlisle confessed to taking the jacket off of the child that the instruction is not warranted.
¶ 26. "The rule in Mississippi is that a circumstantial evidence instruction should be given only when the prosecution can produce neither eyewitnesses or a confession to the offense charged." Stringfellow v. State, 595 So.2d 1320, 1322 (Miss. 1992). In the case at bar, three confessions were given. Carlisle admitted in his verbal statement to Detective Gunter and in his statement that was recorded that he removed the child's life jacket which ultimately led to her demise. Carlisle argues his words were not confessions, only statements and therefore all evidence against him is circumstantial. We disagree and view the words as admissions of guilt. See Mack v. State, 481 So.2d 793, 795 (Miss. 1985); Reed v. State, 229 Miss. 440, 446, 91 So.2d 269, 272 (1956).
¶ 27. This assignment of error is without merit and therefore we affirm.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY ON CHANGE OF VENUE TO RANKIN COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.