## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-00709-SCT

*PEGGY SLOAN STARNS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 4/20/2002 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM B. JACOB |
| | JOSEPH A. KIERONSKI, JR. |
| | DANIEL P. SELF, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/31/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1.    In July of 2001, the Lauderdale County Grand Jury indicted Peggy Sloan Starns for deliberate

design murder in the death of her stepdaughter, Angela Schnoor.  Angela's death occurred on July 30,

1984, and was diagnosed at that time as an accidental death due to asphyxiation by aspiration.  At the

conclusion of a six-day jury trial, Starns was found guilty of murder and sentenced to life in prison.

**FACTS**

¶2.    Michael Schnoor (Mike) and Debbie Herndon (Debbie) married as teenagers in 1977, and their only child, a daughter named Angela Schnoor (Angela), was born in Meridian in 1980. Mike and Debbie divorced in 1981, and he married Peggy Lynn Sloan Starns (Starns) in 1983. At the time of her death, Angela lived with Debbie, although Mike had visitation rights.

¶3.    Early on the morning of Friday, July 27, 1984, Mike, Angela, Starns, and Mike's sister traveled to the Mississippi Gulf Coast for a day on the beach and at the water park. They returned to Meridian, arriving about 2:00 a.m. Saturday morning, and after sleeping late, they had another "big day" on Saturday. According to Mike's testimony they went to town to visit and had hamburgers, then returned to Mike's home and watched a TV movie. Angela fell asleep on the couch, and Mike left her there sleeping while he took a nap in the bedroom. Upon awaking, he went to his parents' house, and Starns was going to bring Angela there when Angela awakened.

¶4.    Upon Mike's departure, Starns was the only person in the apartment with Angela. At 7:40 p.m. Mike called to talk to Starns, but the telephone was busy. Starns subsequently called Mike's parents house and talked to Mike's sister, Jo Ellen, who at the time lived with Mike's parents. Starns told Jo Ellen to tell Mike not to call their apartment because Angela was asleep, and he might wake her up.

¶5.    Soon afterwards, Starns called and told Mike that Angela could not be awakened and was not breathing. Mike rushed home and found Starns standing by the car. Angela was on front seat and appeared to be asleep. However, she was not breathing and her heart was not beating. They drove to Meridian Regional Hospital, and after treatment in the emergency room, Angela's heart was re-started, but there was no spontaneous breathing. Angela was transferred to the Intensive Care Unit, where she died

on July 30, 1984. Dr. Paul Wilcox diagnosed the cause of death to be "Accidental Death Due to Asphyxiation by Aspiration."

¶6. An autopsy of the body was performed by Dr. LeRoy Riddick and Dr. Gary Cumberland on August 27, 1984. Dr. Riddick was informed that Angela was found in the couch which folded down to make one large flat surface when the bottom portion of the couch was picked up. The couch was not, however, folded down when Angela was sleeping upon it. He subsequently responded that:

> What I envisioned was that it was a folding couch operated by a spring mechanism so that the seat of the couch–roll-away bed so that the seat could really push up against the back of the couch with a spring loaded mechanism. And that it was at least possible that in that type of couch that a four-year old might get his or her arm caught and not being able to extricate oneself to get out of it, but also that there would be enough pressure to press on the nose and the mouth so the child could not breathe. But even with that, we didn't accept it because we weren't certain about what type of couch it was and it didn't really make good sense anyway.

¶7. After the autopsy was completed, the cause of death was determined to be "Asphyxia of Undetermined Etiology." After an exhaustive effort, the final stages of investigation of this case were not completed until Debbie contacted Bill East (East) of the Attorney General's Office on November 3, 2000. Following East's investigation, Starns was arrested on July 26, 2001, and indicted for Angela's murder. At trial, the jury returned a verdict of guilty, and the court sentenced Starns to a term of life imprisonment. Aggrieved, Starns appeals and raises four assignments of error. Because we determine that there is no merit to Starns's assignments of error, the Lauderdale County Circuit Court's judgment is affirmed.

## DISCUSSION

I.  **WHETHER STARNS'S FIFTH AMENDMENT RIGHT WAS VIOLATED BY ADMITTING SECRETLY RECORDED**

3

## STATEMENTS MADE BY STARNS TO INVESTIGATOR BILL EAST.

¶8.     Starns's first assignment of error centers around two conversations with investigator East, which she alleges were recorded in violation of her Fifth Amendment rights.  She argues that East secretly recorded the conversations in an attempt to elicit incriminating information that East could use  to build a case against her.  Further, Starns argues that she was misled by East when he told her he was sent by his boss "to talk to [her] and see what happened on that night and maybe put some closure to this thing."  Starns also alleges that she was told that she was not a suspect.  East testified that Starns was the target of his investigation at the time the two conversations took place.

¶9.     Starns relies on *Beckwith v. United States*, 425 U.S. 341, 96 S. Ct. 1612, 48 L.Ed.2d 1 (1976), for the proposition that a person who is the target of an investigation must be informed of his or her Fifth Amendment right against self incrimination. In *Beckwith*, an IRS criminal tax fraud case, the target of the investigation claimed that his conversation with IRS agents led to him incriminate himself, and because he was the "focus" of that investigation, *Miranda* warnings should have been given.  The United States Supreme Court, however, declined to extend *Miranda* to non-custodial investigations, and thus Starns's reliance on *Beckwith* is misplaced.

¶10.    Starns also relies on *Hunt v. State*, 687 So.2d 1154, 1159 (Miss. 1996), in which the defendant voluntarily went to the sheriff's office to file a missing person's report on her husband.  The sheriff, noting that the description fit that of a man found dead near Holly Springs, had Hunt identify the body.  She identified the body as that of her husband, and she was then asked to repeat the information which she had originally given the sheriff, to an investigator.  At that time, the investigator noticed inconsistences in her

4

story, and she was given her *Miranda* rights. On appeal, Hunt argued that her Fifth Amendment right to counsel was violated, but this Court held that she voluntarily submitted herself to the sheriff's department and that she properly waived her rights under *Miranda*.

¶11.    Starns argues that this Court allowed Hunt's pre-*Miranda* warning statement because it had been voluntarily given and she was not identified as a suspect. However, Starns's argument is flawed. Although it is true that Hunt was not the target of an investigation nor a suspect in her husband's murder at the time she voluntarily entered the sheriff's department, this Court did not evaluate Hunt's change from a non-suspect to a suspect in determining whether her Fifth Amendment right to counsel was violated. In fact, what this Court considered was whether Hunt was properly given *Miranda* warnings and whether she was in custody at that time. *Id*. at 1160. Thus the fact that East told Starns his inquiry was only to put closure to this matter and that she was not a suspect does not change our holding that no violation occurred. There is no doubt that East had decided before he went to interview Starns that she was the primary suspect, the target of his investigation. However, the mere fact that an investigation has focused on a suspect does not trigger the need for *Miranda* warnings in non-custodial settings. See *Minnesota v. Murphy*, 465 U.S. 420, 104 S. Ct. 1136, 1144, 79 L.Ed.2d 409 (1984). Starns's Fifth Amendment rights were not violated by admitting her secretly recorded conversations with East.

II.    **WHETHER THE STATE WAS REQUIRED TO PROVE AN ACT DONE BY STARNS TO CAUSE THE DEATH OF ANGELA SCHNOOR.**

¶12.    Starns argues that neither the indictment nor jury Instruction C-7[1] stated any act taken by her to cause Angela's death.  Starns moved for a directed verdict, specifically pointing out that the State had failed to establish an act by her that caused Angela's death.  The trial court denied the motion.

¶13.    The State argues that Instruction C-7 sufficiently charged the jury with the act committed by Starns, by using the language "causing her asphyxiation."  Instruction C-7 reads as follows:

> The Court instructs the Jury that, should you find from the evidence in this case, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that:
>
> 1.  On or about the 28th day of July, 1984, in Lauderdale County, Mississippi;
> 2.  The Defendant, Peggy Sloan Starns, did wilfully, unlawfully and feloniously, without authority of law
>
> 3.  and with deliberate design to effect the death, kill and murder a human being, Angela Schnoor, *by causing her asphyxiation,*
>
> then it is your sworn duty to find the Defendant guilty of Murder.
>
> Should the State fail to prove any one or more of these essential elements beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, then you shall find the Defendant not guilty of Murder.

(emphasis added.)

¶14.    The State contends that the asphyxiation was itself the act and that it was sufficient to tell the jury that *somehow* Starns caused Angela to suffer a lack of oxygen which led to her death.  The State also argues that the indictment does not have to set forth the manner or means by which the death was caused and that it is sufficient to charge murder in the proper terms.

---

[1]The State offered Instruction S-2(A), which the Court adopted as C-7.  Starns refers to C-7 as S-2(A) whereas the State refers only to C-7.

¶15. Starns relies on *Edwards v. State*, 755 So.2d 443 (Miss. Ct. App. 1999), to support her contention that the State must put forth a coherent theory and prove through evidence that Starns committed an act to cause Angela to asphyxiate. In *Edwards*, the parents of a four year old child were charged with culpable negligence manslaughter after the child drowned while on a camping excursion with his parents. A review of that case shows that it is inapplicable. *Edwards* involved reversal and dismissal of criminal charges due to improper jury instructions and insufficient evidence. In the present case, C-7 properly charged the jury on the fact-finding it had to perform. Its job was to evaluate the evidence and determine if Starns asphyxiated Angela. In other words, it had to determine whether the evidence proved beyond a reasonable doubt that Starns stopped Angela from being able to take in oxygen long enough to cause her death.

¶16. The State's theory was that Starns was the only person with Angela when she stopped breathing. The doctors testified that the couch could not have caught Angela's arm and held her so she could not breathe, as Starns asserted in her version of the cause of Angela's death. Whether Starns pressed her face into something by pushing on the back of her head or closed her nose and covered her mouth, the State's theory of suffocation and death by asphyxiation was sufficiently charged in C-7. This issue is without merit.

### III. WHETHER THE INDICTMENT PROPERLY APPRISED STARNS OF THE NATURE AND CAUSE OF THE ACCUSATIONS AGAINST HER.

¶17. Starns's indictment reads in pertinent part: "PEGGY SLOAN STARNS in said County and State, on or about the 28th day of July, A.D., 1984 did wilfully, unlawfully, and feloniously, without authority of law and with deliberate design to effect death, kill and murder a human being, ANGELA SCHNOOR . . . ."

¶18.    An indictment must apprise a defendant of the "nature and cause of the accusations" against her.

U.S. Const. amend. V; Miss. Const. art. 3, § 26.

¶19.    The Mississippi Code instructs:

> In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased.

Miss. Code Ann. § 99-7-37 (Rev. 2000).

¶20.    The Uniform Circuit and County Court Rules further provide:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
>     1.    The name of the accused;
>     2.    The date on which the indictment was filed in court;
>     3.    A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
>     4.    The county and judicial district in which the indictment is brought;
>     5.    The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
>     6.    The signature of the foreman of the grand jury issuing it; and
>     7.    The words "against the peace and dignity of the state."

URCCC 7.06 (2003).

¶21.    Starns argues that her indictment did not apprise her of the nature and cause of the accusations against her because it did not follow Rule 7.06's "plain, concise and definite written statement of the essential facts constituting the offense charged" requirement. She also argues that Section 99-7-37's instruction "[i]n an indictment for homicide it shall not be necessary to set forth the manner in which or the

8

means by which the death of the deceased was caused" should not be followed because it is inconsistent with Rule 7.06 and Rule 7.06 trumps pursuant to *Newell v. State*, 308 So.2d 71 (Miss. 1975), and Miss. R. Evid. 1103. Furthermore, she also argues that the instruction is unconstitutional because it does not track Miss. Const. art. 3, § 26's "nature and cause of the accusation" language.

¶22. This Court recently addressed this issue in *Jones v. State,* 856 So.2d 285 (Miss. 2003), where the defendant alleged that his homicide indictment did not apprise him of the nature and cause of the accusations against him because it did not specifically state how he committed the crime. This Court held:

> [T]he defense is not entitled to notice of specific overt acts charged to have caused a murder. Accordingly, the statute [99-7-37] does not violate Jones's constitutional notice rights. Moreover, the record makes clear that Jones was not in any way prejudiced by the indictment in the preparation of his defense.
>
> \* \* \*
>
> If the statute fully and clearly defines the offense, the language of the statute is sufficient to provide notice of the crime charged. We have repeatedly held that the manner or means employed in the commission of a crime need not be averred.

*Jones*, 856 So.2d at 289 (citations omitted).

¶23. Pursuant to *Jones,* the indictment did apprise Starns of the nature and cause of the accusations against her. The indictment tracked § 99-7-37 and apprised Jones of the material elements of the statutory offense. Moreover, Starns has not shown that the indictment unduly prejudiced her. From the beginning, there was no question that Starns was being charged for the unlawful asphyxiation of Angela Schnoor. This issue is without merit.

> **IV. WHETHER THE COURT ERRED BY FAILING TO GRANT THE PEREMPTORY INSTRUCTION, MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, A NEW TRIAL IN THAT THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE**

## EVIDENCE AND THE STATE FAILED TO PROVE CRIMINAL AGENCY.

¶24. Starns finally argues that the trial court erred in denying her request for a peremptory instruction and her motion for acquittal or for a new trial.

¶25. This Court will not reverse a trial court's denial of a motion for acquittal unless, viewing the evidence in the light most favorable to the State, the verdict was not based on *sufficient* evidence. ***Pruitt v. State,*** 807 So.2d 1236, 1242-43 (Miss. 2002). This Court will not reverse a trial court's denial of a motion for new trial unless, accepting the evidence that supports the verdict as true, the verdict was against the overwhelming *weight* of the evidence. ***Pruitt***, 807 So.2d at 1242-43.

¶26. Starns was the only person with Angela when she stopped breathing. Starns said that she found Angela with her arm caught in the couch face down and that Angela smothered as a result. However, there were no bruises on Angela's arm, and the doctors who examined her and performed the autopsy, as well as the expert who examined the facts, all said Angela could not have died by having her arm caught in the couch.

¶27. Starns urged that an autopsy should not be done, and she became angry when she learned that one would be done. Dr. Mary Case testified that it was her opinion that Angela died as a result of homicide and not as a result of an accident or suicide. When asked about the report of Angela being found face down on the couch, her arm caught in the mechanism, and that causing her head to be positioned so that she could not breathe, Dr. Case testified: "That is a story that is not a possibility."

¶28. Dr. LeRoy Riddick, the State Medical Examiner for the State of Alabama, co-signed an autopsy report that Dr. Gary Cumberland, another medical examiner, performed on Angela in 1984. Dr.

10

Cumberland said he was led to believe that Angela died in a full-size hide-a-bed folding couch that rolls out into a full-size bed. He further stated that a photograph of the couch would have been important to him in determining the manner of death.

¶29. Dr. Riddick also testified that the reason given did not make good sense but that it was possible, however, that a four-year-old girl could have died in a folding couch operated by a spring mechanism where the seat could push up against the back of the couch. He said that the photographs of the couch admitted into evidence at trial did not depict the type of couch he had envisioned in 1984, and if he had seen the pictures of the couch in 1984 they would have affected his conclusions.

¶30. The verdict was based on sufficient evidence. The verdict was not against the overwhelming weight of evidence. The trial court correctly denied the peremptory instruction and motion for acquittal or a new trial. This issue is without merit.

### CONCLUSION

¶31. For the reasons stated above, the judgment of the Circuit Court of Lauderdale County is affirmed.

¶32. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TOGETHER WITH PAYMENT OF COURT COSTS AND FEES, AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**